Matthew I. Knepper, Esq.
Nevada Bar No. 12796
Miles N. Clark, Esq.
Nevada Bar No. 13848
KNEPPER & CLARK LLC
10040 W. Cheyenne Ave., Suite 170-109
Las Vegas, NV 89129
Phone: (702) 825-6060
Fax: (702) 447-8048
Email: matthew.knepper@knepperclark.com
Email: miles.clark@knepperclark.com

David H. Krieger, Esq.
Nevada Bar No. 9086
HAINES & KRIEGER, LLC
8985 S. Eastern Ave., Suite 350
Henderson, NV 89123
Phone: (702) 880-5554
Fax: (702) 385-5518
Email: dkrieger@hainesandkrieger.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| DAWN MINTUN | Case No.: 2:19-cv-00033-JAD-NJK |
| Plaintiff, | |
| vs. | **FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF** |
| EQUIFAX INFORMATION SERVICES, LLC; EXPERIAN INFORMATION SOLUTIONS, INC.; and PHH MORTGAGE ICE CENTER, | **JURY TRIAL DEMANDED** |
| Defendants. | |

## JURISDICTION AND VENUE

1.     This Court has federal question jurisdiction because this case arises out of violation of federal law. 15 U.S.C. §1681 *et seq.*; 28 U.S.C. §1331; *Smith v. Community Lending, Inc.*, 773 F.Supp.2d 941, 946 (D. Nev. 2011).  The Court has supplemental jurisdiction over

FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEFJURY TRIAL DEMANDED - 1

Plaintiff's Nevada state law claims. *See* 28 U.S.C. § 1367.

2. This action arises from violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681–1681x ("FCRA"), and the Nevada Revised Statutes, particularly NRS 598C.

3. Venue is proper in the United States District Court for the District of Nevada pursuant to 28 U.S.C. § 1391(b) because Plaintiff is a resident of Clark County, the State of Nevada and because Defendants are subject to personal jurisdiction in the County of Clark, State of Nevada as they conduct business there. Venue is also proper because, the conduct giving rise to this action occurred in Nevada. 28 U.S.C. § 1391(b)(2). Further, Experian has a registered agent of service in Nevada and is listed with the Nevada Secretary of State as a foreign limited liability company doing business in Nevada.

**PARTIES**

4. Plaintiff Dawn Mintun ("Plaintiff") is a natural person residing in the County of Clark, State of Nevada. In addition, Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c). Plaintiff is also a "consumer" as that term is defined by NRS 598C.040, and a "victim of consumer fraud" as defined in NRS 41.600.

5. Defendant PHH Mortgage ICE Center ("PHH") is a furnisher of information as contemplated by 15 U.S.C. § 1681s-2(b) that regularly and in the ordinary course of business furnishes information to a consumer credit reporting agency. PHH is a corporation doing business in Nevada.

6. Defendant Experian Information Solutions, Inc. ("Experian") regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties, and uses interstate commerce to prepare and/or furnish the reports. Experian is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f), a

FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF JURY TRIAL DEMANDED - 2

"Reporting Agency" as that term is defined by NRS 598C.100, and a "person" as used in NRS 598. Experian is doing business in Nevada, with a principal place of business in Ohio.

7. Defendant Equifax Information Services, LLC ("Equifax") regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties, and uses interstate commerce to prepare and/or furnish the reports. Equifax is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f), doing business with its principal place of business in Georgia.

8. Unless otherwise indicated, the use of Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendant.

**FACTUAL ALLEGATIONS – FCRA VIOLATIONS**

***GENERAL ALLEGATIONS***

9. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. Congress enacted the FCRA to insure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers.

FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEFJURY TRIAL DEMANDED - 3

10.     The FCRA protects consumers through a tightly wound set of procedural protections from the material risk of harms that otherwise flow from inaccurate reporting. Thus, through the FCRA, Congress struck a balance between the credit industry's desire to base credit decisions on accurate information, and consumers' substantive right to protection from damage to reputation, shame, mortification, and the emotional distress that naturally follows from inaccurate reporting of a consumer's fidelity to his or her financial obligations.

11.     On or about December 20, 2012, Plaintiff filed for Chapter 13 Bankruptcy in the United States Bankruptcy Court for the District of Nevada pursuant to 11 U.S.C. §1301 *et seq.* Plaintiff's case was assigned Case Number 12-23857-mkn (the "Chapter 13" or "Bankruptcy"). On October 21, 2013, Plaintiff's Chapter 13 Plan was confirmed (the "Confirmed Chapter 13 Plan" or "Confirmation Order"). On March 7, 2016, Plaintiff earned her Chapter 13 discharge.

12.     Plaintiff included an account from Wells Fargo in her bankruptcy. On August 6, 2014, Wells Fargo filed a "transfer of Claims for Other than Security," which effectively transferred or sold its interest to PHH Mortgage Corporation. The Wells Fargo/PHH Account was thus included in Plaintiff's bankruptcy and discharged therein.

13.     Additionally, Defendants' conduct described herein did not comply with the Consumer Data Industry Association's Metro 2 reporting standards, which provide guidance for credit reporting and FCRA compliance.

14.     The Consumer Data Industry Association ("CDIA") publishes the Metro 2 ("Metro 2") reporting standards to assist furnishers with their compliance requirements under the FCRA.

FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEFJURY TRIAL DEMANDED - 4

15. Courts rely on such guidance to determine furnisher liability. *See e.g. In re Helmes*, 336 B.R. 105, 107 (Bankr. E.D. Va. 2005).

16. On information and belief, all defendants adopted the Metro 2 reporting standards and at all times relevant implemented the Metro 2 format as an integral aspect of their respective duties under the FCRA to have in place adequate and reasonable policies and procedures to handle investigations of disputed information.

17. The Metro 2 format guidelines for credit reporting are nearly identical for reports made during the "Month BK Filed," "Months Between Petition Filed and BK Resolution," and after "Plan Completed" for Chapter 13 Debtors and furnishers who choose to report post-bankruptcy credit information to CRAs. *See e.g.*, 2015 CDIA Credit Reporting Resource Guide ("2015 Metro 2"), Frequently Asked Question 28(a), at pages 6-21 – 6-22.

18. Thus, many of the consumer reporting fields should be reported the same way both during and after a bankruptcy proceeding, *id*., with the following relevant exceptions:

a. Current Balance

   i. For the "Month BK Filed" and "Months Between Petition Filed & BK Resolution," Metro 2 instructs the furnisher to report the outstanding balance amount. *Id*.

   ii. However, for the "Plan Confirmed" period, Metro 2 instructs the furnisher to report the "Chapter 13 plan balance, which should decline as payments are made." *Id*. at 6-22.

   iii. And, for Current Balance reporting when "Plan Completed – All payments made according to plan – no further obligation," Metro 2 instructs the furnisher to report a current balance of "Zero." *Id*.

FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEFJURY TRIAL DEMANDED - 5

    b.       <u>Scheduled Monthly Payment Amount</u>:

        i.       For the "Month BK Filed" and "Months Between Petition Filed & BK Resolution," Metro 2 instructs the furnisher to report the "contractual monthly payment amount." *Id*. at 6-21.

        ii.       However, for the "Plan Confirmed" period, Metro 2 instructs the furnisher to report the "Chapter 13 Payment Amount." *Id*. at 6-22.

        iii.      And, for Scheduled Monthly Payment Amount reporting when "Plan Completed – All payments made according to plan – no further obligation," Metro 2 instructs the furnisher to report a current balance of "Zero." *Id*.

19.    Despite the Metro 2 Format's instructions, Defendant named herein failed to conform to the Metro 2 Format when reporting on Plaintiff's accounts after the Plaintiff filed Bankruptcy as further set forth below.

20.    Defendants rereported inaccurate and incomplete information, respectively, thus violating its duty to follow reasonable procedures to assure maximum possible accuracy under 15 U.S.C. § 1681e(b) when providing a consumer with a disclosure of her consumer file.

21.    To this end, the incomplete reporting provided to Plaintiff as described herein departed from the credit industry's own reporting standards and was not only inaccurate and incomplete, but also materially misleading under the CDIA's standards as well.

22.    Despite Metro 2 Format's instructions, Defendants failed to conform to the Metro 2 Format as further set forth below.

23.    In turn, Defendants reported and rereported inaccurate and incomplete information, thus violating its duty to follow reasonable procedures to assure maximum possible accuracy under 15 U.S.C. §§ 1681e(b) and 1681s-2(b) when providing a Plaintiff a consumer file.

FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEFJURY TRIAL DEMANDED - 6

24.  To this end, the adverse reporting on Plaintiff's consumer report departed from the credit industry's own reporting standards and was not only inaccurate, but also materially misleading under the CDIA's standards as well.

25.  A "materially misleading" statement is concerned with omissions to credit entries, that in context create misperceptions about otherwise may be factually accurate data. *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009).

26.  Upon information and belief, the failure to accurately report complete information about a current account, particularly positive payment history, significantly impacts an individual's credit score.

## EQUIFAX FCRA VIOLATIONS

### *RE: PHH Account No. 9546*

27.  In an Equifax credit report dated September 1, 2018, Confirmation No. 8244021342 ("Equifax Report"), PHH inaccurately reported for Account No. 9546 ("PHH Account") that the account had been 180 days or more past due, even though Plaintiff had discharged the account in bankruptcy.

28.  On or about November 15, 2018, and pursuant to 15 U.S.C. 1681i(a)(2), a dispute letter was sent pointing out the inaccurate reporting of the PHH Account ("Equifax Dispute Letter").  Plaintiff's dispute letter was sent to Equifax in writing, outlining claimed incorrect and inaccurate credit information furnished by PHH, and requesting that inaccurate and incorrect derogatory information be removed, corrected or deleted.

29.  Upon information and belief, upon receiving the Equifax Dispute Letter, Equifax notified PHH of the dispute based on its mandated statutory duty pursuant to 15 U.S.C. § 1681i.

FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEFJURY TRIAL DEMANDED - 7

30. Alternatively, Equifax failed to notify PHH pursuant to its duties to do so under 15 U.S.C. § 1681i(a)(2).

31. Defendants were each required to conduct an investigation and reinvestigation, respectively, into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i and 1681s-2(b).

32. On or about November 24, 2018, Plaintiff received a "reinvestigation" from Equifax, File No. 323375605 ("Equifax Reinvestigation"). Equifax indicated that it had received and responded to the Equifax Dispute Letter, as it indicated that Plaintiff's PHH Account had been "updated."

33. A reasonable investigation and reinvestigation by Equifax and PHH into these accounts would have indicated that they should not have reflected late payments.

34. Equifax and PHH failed to conduct a reasonable investigation and reinvestigation as required by 15 U.S.C. §§ 1681i and 1681s-2(b), failed to review all relevant information Plaintiff provided in her Equifax dispute, as required by and in violation of 15 U.S.C. §§ 1681i and 1681s-2(b), and wrongly verified inaccurate information in connection with Plaintiff's credit reports.

35. Specifically, on Equifax's reinvestigation, Equifax inaccurately rereported that the PHH Account was "180 days or more past due," with a status of "over 120 days past due line of credit."

36. On information and belief, upon receipt of PHH's investigation into Plaintiff's dispute, Equifax blindly relied on the erroneous information contained in PHH's investigation, without adequately checking the response data to view how applying the data would render the reporting on Plaintiff's consumer report.

FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEFJURY TRIAL DEMANDED - 8

37.    In blindly relying on the data PHH provided, Equifax failed to follow reasonable procedures designed to ensure the maximum possible accuracy of information in Plaintiff's consumer report.  15 U.S.C. § 1681e(b).

38.    By inaccurately reporting account information relating to the debt, Equifax and PHH failed to take the appropriate measures as required under 15 U.S.C. §§ 1681i(a), 1681e(b), and 1681s-2(b), respectively.

39.    The Equifax Dispute Letter also included a statement of dispute as that term is meant pursuant to 15 U.S.C. § 1681i(b). Specifically, the Plaintiff requested that in the event Equifax failed to make the requested corrections identified in the Equifax Dispute Letter that Equifax include a statement on the Plaintiff's credit report stating that the PHH accounts was disputed.  However, Equifax failed to provide such a statement on the PHH Account, and thereby breached its statutory obligations under 15 U.S.C. § 1681i(b).

40.    Upon information and belief, Equifax also failed in Plaintiff's subsequent consumer reports containing the above disputed information to clearly note that this account was disputed by the Plaintiff and provide either the Plaintiff's dispute statement or a clear and accurate codification or summary of the dispute in violation of Equifax's statutory obligations under 15 U.S.C. § 1681i(c).

41.    On information and belief, Equifax and PHH's reporting of this inaccurate information was willful.  Consequently, these defendants are liable for statutory damages.  15 U.S.C. § 1681n.

42.    As a result of Equifax and PHH's continued incomplete and inaccurate reporting, Plaintiff has suffered actual damages, including without limitation transportation costs, lost time, as well as damage to her creditworthiness.  In particular, Plaintiff sought to refinance her

FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEFJURY TRIAL DEMANDED - 9

home loan and was denied at least in part due to the inaccurate reporting on her PHH tradeline.  Plaintiff has also suffered emotional distress, including anger, anxiety, and frustration as a result of the issues surrounding her credit reporting.  She has also noticed that this emotional distress impacts her ability to work effectively as a caregiver.

43.     By reporting incomplete and inaccurate account information relating to the PHH Account after notice and confirmation of its errors, Equifax and PHH failed to take the appropriate measures as required under 15 U.S.C. §§1681i(a), 1681e(b), and 1681s-2(b).

44.     Plaintiff has been required to retain counsel to prosecute this action based on these defendants' defective investigations and reinvestigation, and is entitled to recover reasonable attorney's fees and costs.

### THE EXPERIAN VIOLATIONS

45.     The FCRA entitles the consumer to take an active role in the protection of his or her sensitive personal information, by giving the consumer a right to request "All information in the consumer's file at the time of the request."  15 U.S.C. § 1681g(a)(1).[1]  "File," is explicitly defined in the FCRA, and when applied to consumers, means, "all of the information on that consumer and retained by a consumer reporting agency regardless of how the information is stored."  15 U.S.C. § 1681a(g).  The Ninth Circuit has defined "file" as all information the CRA maintains on a consumer that has been, or might be, included in a consumer report on that consumer.  *Shaw v. Experian Information Solutions, Inc.*, 891

---

[1] This requirement is subject to exceptions in Sections 1681h(a)(1) and 1681g(a)(1)(A)-(B), which are not relevant here.

FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEFJURY TRIAL DEMANDED - 10

F.3d 749 (9th Cir. 2018).

46.    The scope of a consumer report is broad.[2]  Section 1681a(d) defines a consumer report, in part, as a communication from a CRA bearing on a consumer's "credit worthiness, credit standing, credit capacity, character, general reputation, or personal characteristics which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for (A) credit or insurance to be used primarily for personal, family, or household purposes; (B) employment purposes; or (C) *any other purpose authorized under section 1681b* . . . ."  Section 1681b(a)(2) provides that a consumer report is, *inter alia*, a document provided "in accordance with the written instructions of the consumer to whom it relates."  Similarly, Section 1681i(a)(6)(B)(ii) requires a CRA to provide a consumer with a "consumer report" following any reinvestigation of any item of information on the consumer's file disputed by the consumer, so long as the CRA does not find the dispute frivolous.[3]  Experian has testified that a consumer can request that the results of reinvestigation be sent to a third party per a consumer's request, and in response, Experian would send the entire reinvestigation – which could be a consumer's complete file.[4]  Therefore, every item of information on a consumer disclosure *might* be provided on a consumer report.[5]

---

[2] *See Reynolds v. Hartford Financial Services Group*, 435 F.3d 1081, 1094 (9th Cir. 2006), *rev'd on other grounds*, 551 U.S. 47 (2007).

[3] *See* 15 U.S.C. § 1681i(a)(3).

[4] *See Cardinali v. Experian*, No. 16-cv-2046-JAD-NJK, ECF Dkt. 140, at ¶ 18 & n.75 (D. Nev. Feb. 19, 2019).

[5] *See Shaw*, 891 F.3d at 759.

FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEFJURY TRIAL DEMANDED - 11

47. In fact, Experian's internal policies disclosed in discovery elsewhere show that Experian believes the results of reinvestigation must take the form of a consumer report,[6] as well as suggest that Experian considers a consumer disclosure to be a consumer report:

> It is Experian's policy that consumer reports may not contain any of the following information:
>
> . . . .
>
> Inquiries related to credit or insurance transactions that are not initiated by the consumer (e.g. Prescreen), except on consumer file disclosures available only to and viewable by the consumer from Experian's My Customer Experience ("MCE");[7]

48. Pursuant to section 1681g, when a CRA discloses to a consumer that consumer's file, the disclosure must "clearly and accurately" reflect all the information in that consumer's file at the time of the disclosure. 15 U.S.C. § 1681g(a)(1). The Ninth Circuit evaluates the clarity and accuracy of a disclosure by recourse to how an average consumer would view them. *See Shaw*, 891 F.3d at 759-60.

49. Experian provided several documents which qualified as Section 1681g consumer disclosures. Examples of these documents included an Experian credit report dated June

---

[6] *See Ashcraft v. Experian*, No. 16-cv-2978-JAD-NJK, ECF Dkt. 130 at 10 & n.57 (citing Experian's Fair Credit Reporting Act Policy).

[7] *Leoni v. Experian*, No. 17-cv-1408-RFB-VCF, ECF Dkt.115 at 3, 115-2 (D. Nev. Dec. 13, 2018).

FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEFJURY TRIAL DEMANDED - 12

30, 2018, Report No. 1408-8216-13 ("Experian Report"). Second was a November 30, 2018 reinvestigation, Report No. 2985-3151-65 ("Experian Reinvestigation"). Experian refers to both documents as "consumer disclosures" in its own briefing.[8]

50.    Both the Experian Report and Experian Reinvestigation contained fundamental substantive differences in the manner in which they reported data, which caused confusion as to which, if either, of the disclosures constituted a complete copy of Plaintiff's file.

51.    The representations on the Experian Report and Experian Reinvestigation also violated Nevada state law, particularly NRS 598, NRS 598C, and 41.600.

*Experian Did Not Provide Clear, Accurate, and Complete Disclosures in Connection with Reported and Rereported Bankruptcy Inclusion Dates.*

52.    If a debt is included in a consumer's bankruptcy, then Experian notes on the particular tradeline the date at which the debt was incorporated in the bankruptcy. This commonly occurs in, among other places, the "account history" section of a tradeline, and is prefaced by the phrase, "Debt included in Chapter [7, 13, etc.] Bankruptcy" on the date of the petition. On information and belief, Experian construes the word "included" to mean the date a bankruptcy petition was filed. Plaintiff's Experian Report additionally informed Plaintiff that accounts reported as being included in Chapter 13 bankruptcy can so report for up to seven years.

_____

[8] *See* ECF Dkt. 16, at 11.

FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEFJURY TRIAL DEMANDED - 13

53.    On information and belief, Experian obtains bankruptcy-related information, including but not limited to the petition date, discharge date, bankruptcy type, and identification number form a third-party public records vendor.[9]  Thus, Experian does not rely exclusively on data furnishers in either obtaining, or providing, bankruptcy-related information.

54.    Experian correctly reported in the public records section of the Experian Report an inaccurate "inclusion" date on the Experian Report and Experian Reinvestigation, despite properly reporting Plaintiff's Chapter 13 bankruptcy as having been (1) filed in December 2012, (2) resolved in March 2016, and (3) discharged.  However, at the tradeline level the Experian Report contained inconsistencies.  Specifically, Experian inaccurately reported a tradeline from WF/Home PR ("WF Account") as included in Chapter 13 bankruptcy on December 25, 2012, after the date of Plaintiff's bankruptcy petition.

55.    This inaccurate, disparate bankruptcy "inclusion" date reporting had the tendency to confuse an ordinary consumer like Plaintiff, and created the impression that the WF Account had been "included" in bankruptcy on dates after the actual petition date.

56.    On information and belief, Experian has an internal policy wherein if a bankruptcy is referenced in a Dispute, Experian will unilaterally update all accounts presently reporting in bankruptcy, to ensure that the date these accounts all report as being "included" in the bankruptcy on the correct petition date.

---

[9] *See Harroff v. Experian*, No. 17-cv-2154-KJD-GWF, ECF Dkt. 19-1, at ¶ 24 & n.13 (D. Nev. Feb. 26, 2019).

FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEFJURY TRIAL DEMANDED - 14

57. In a dispute letter sent to Experian on November 15, 2018, Plaintiff explicitly disputed several accounts which had been included in her bankruptcy, but which she contended were not being reported that way.

58. However, in the subsequent Experian Reinvestigation, Experian did not reconcile the disparate bankruptcy date it had reported on the WF Account. Thus, Experian failed to implement its internal bankruptcy-reconciliation policy and thus failed to report any of Plaintiff's tradelines as being "included" on the date of her Chapter 13 bankruptcy petition.

59. The removal of all indications that Plaintiff's debts were included in her bankruptcy for which she had obtained a discharge constituted a failure to properly reinvestigate Plaintiff's dispute, as interpreted by Experian, in violation of 15 U.S.C. §§ 1681i and 1681e(b).[10]

60. Experian's continued inaccurate reporting of these fundamentally inconsistent and confusing "inclusion" dates and then the subsequent elimination of all bankruptcy indications was reckless, and violated Experian's own internal policy for consistently reporting bankruptcy-inclusion dates, in violation of 15 U.S.C. §§ 1681e(b) and 1681g. Plaintiff is, accordingly, eligible for statutory damages.

---

[10] Nothing in the plain language of Section 1681e(b) pertains only to information transmitted to a third party. Instead, as Experian's witnesses have testified elsewhere, maximum accuracy is part of reported credit information. *See, e.g.*, *Clark v. Experian*, No. 16-cv-32 (MHL), ECF Dkt. 31-2, at ¶ 9 (E.D. Va. Oct, 14, 2016). Indeed, Experian's in-house expert has testified that "[a]lmost everything Experian does, in the capacity of a [CRA], is done with the intent to assuring maximum possible accuracy of the information it stores and disseminates." *Id.* at ECF Dkt. 31-1, at 61 of 74 (E.D. Va. Oct. 14, 2016); *see also Ashcraft v. Experian*, No. 16-cv-2978-JAD-NJK, ECF Dkt. 134-1, at 66:1-22; 68:10-19 (D. Nev. Dec. 14, 2018).

FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEFJURY TRIAL DEMANDED - 15

***Experian Did Not Provide Clear, Accurate, and Complete Disclosures in Connection with Plaintiff's Account History.***

61.     The Experian Report and Reinvestigation contained confusing information related to Plaintiff's account history.   For example, Experian reports the "account history" of particular tradelines, with four principal data points: "Account Balance," "Date Payment Received," "Scheduled Payment Amount," and "Actual Amount Paid." Experian's "plain-English" explanation of this section explains, "[t]his section also includes the scheduled payment amounts, amounts actual paid and the dates those payments were made."

62.     However, Experian's presentation of this information leaves it far from clear which dates actually coincide with payment amounts, because Experian lists only a three-letter code signifying the month an event occurred, followed by a two-digit code – without specifying whether the digits pertain to the month or the year the payment was received.  The Experian Report contained this confusing information on five tradelines; the Experian Reinvestigation contained it on seven.

63.     Due to this ambiguity, it was impossible for an average consumer like Plaintiff to determine whether Experian was accurately reporting the date of her payments on these accounts, such that she could determine whether the payments should be disputed.

64.     Experian could have easily rectified this issue, had it done nothing more than to explain that the two-digit code pertained to the *month* or the *year*, as applicable.   However, Experian omitted this information from its plain-English description of the information in question, leaving average consumers like Plaintiff to guess as to the meaning of this information.

FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEFJURY TRIAL DEMANDED - 16

65. In failing to provide plain-English descriptions of the notations in the account history sections of selected tradelines, Experian failed to make its disclosures in a manner which was understandable to the average consumer, in violation of 15 U.S.C. § 1681g(a)(1).

***Experian Violated Section 1681g(a)(1) with Respect to Information Regarding Soft Inquiries.***

66. Experian failed to provide Plaintiff with all of the information in its "file" in connection with its explanation of inquiries. The Experian Report contained a list of inquiries shared both with others ("Hard Inquiries") and those purportedly only shared with the Plaintiff ("Soft Inquiries").

67. To explain its Soft Inquiries, Experian explained, "we offer credit information about you to those with a permissible purpose." However, Experian did not explain the reason why each particular Soft Inquiry had been made.

68. On information and belief, Experian stores a copy of the permissible purpose any subscriber may have for making an inquiry in its files, and can track the purpose types any third party may have to make an inquiry into a consumer's file. In fact, several purposes for soft inquiries were disclosed on Plaintiff's Experian Report and Experian Reinvestigation. For example, the Experian Report and Experian Reinvestigation contained the cryptic notation that a June 6, 2018 inquiry from American Reporting Company had been made for "for 30," which was entirely unexplained. Slightly more readable were June 17 and 20, 2017 inquiries from CBC Innovis for "secondary logging," although the meaning of "secondary logging" was left entirely unexplained.

69. Thus, information about when any soft inquiry was made was in Experian's possession, and both could and should have been disclosed to Plaintiff in plain-English on her disclosure pursuant to Section 1681g(a)(1). Moreover, as noted above, all information on

FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEFJURY TRIAL DEMANDED - 17

a consumer disclosure *might* be sent to a third party in a consumer report per the consumer's request.[11]  However, Experian did not provide all of the permissible purposes it had stored.

70.     This failure to disclose a plain-English description of each soft inquiry in Experian's file was confusing to an ordinary consumer like Plaintiff, who would have to guess as to why any consumer report had been furnished to any particular third party.  Consequently, Experian's impartial disclosure violated Section 1681g(a)(1).

### *Experian Violated Section 1681g(a)(1), NRS 41.600, NRS 598.0915(5), and NRS 598.0923(3) by misrepresenting the ways by which its consumer disclosures would be used.*

71.     The confusion regarding Experian's soft inquiries also included Experian's misrepresentation about the circumstances under which it would permit third parties to access credit.  For example, Experian explained to Plaintiff in its Section 1681g disclosures that "[w]e offer credit information about you to those with a permissible purpose," when in fact on information and belief Experian makes such information available to consumers for purposes which are impermissible in nature.[12]

72.     Additionally, Experian provides credit information in a consumer report known as a "Bullseye."  A Bullseye can contain information from a variety of sources, including the consumer, a third-party furnisher, and even Experian itself.  Experian's in-house expert has stated elsewhere that a Bullseye is credit information.[13]  However, Experian has stated elsewhere that it does not request, nor require, a permissible purpose to be offered before

---

[11] *See Cardinali*, ECF Dkt. 140, at ¶ 18 & n.75 (D. Nev. Feb. 19, 2019); *Shaw*, 891 F.3d at 759.
[12] *See Foskaris v. Experian*, No. 17-cv-506-KJD-PAL, ECF Dkt. 97 (D. Nev. Mar. 21. 2018).
[13] *See id.* at ECF Dkt. 97-35, at 223:22-224:2 (D. Nev. Mar. 21, 2018).

FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEFJURY TRIAL DEMANDED - 18

a Bullseye is provided.[14]

73.   Representing that Plaintiff's credit information would be made available for permissible purposes, while not reporting that her information would be also be made available for purposes not permissible under the FCRA, had the tendency to confuse an ordinary consumer like Plaintiff, in violation of 15 U.S.C. § 1681g(a)(1).

74.   The Experian Report, which was provided on June 30, 2018, and the Experian Reinvestigation, which was provided on November 30, 2018, both contained these material misrepresentations about when and under what circumstances Experian would make Plaintiff's credit information available to third parties.  Through these representations, Experian intended consumers like Plaintiff to believe that her credit information would only be provided for permissible purposes, when in fact it was not.

75.   Experian's disclosures also violated Nevada state law.  Under NRS 598.0915(5), a person engages in a deceptive trade practice if they "knowingly make[] a false representation as to the characteristics, ingredients, uses, benefits, alterations, or quantities of goods or services for sale or lease . . . ."  Experian sells Plaintiff's consumer data, and represented to Plaintiff that the data would only be sent – i.e., sold – for "permissible" purposes, when in fact Experian sells data for purposes which are not permissible.

76.   Further, NRS 598.0923(3) makes it a deceptive trade practice to violate "a state or federal statute or regulation in connection with the sale or lease of goods or services."  Because 15

---

[14] *See Nichols v. Experian*, No. 17-cv-2337-APG-GWF, ECF Dkt. 51-4, at 29-31 (D. Nev. Sept. 4, 2018).

FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEFJURY TRIAL DEMANDED - 19

U.S.C. 1681e(a) obligated Experian to adopt reasonable procedures to ensure that its consumer disclosures are provided only for a permissible purpose, and because Experian had an obligation to make its Section 1681g disclosures in a manner which was not misleading or confusing to ordinary consumers, it violated NRS 598.0923(3).

77.     Under NRS 41.600, any violation of NRS 598.0915 or 598.0923 may be brought under NRS 41.600.

**Experian Violated Section 1681g(a)(1), NRS 41.600, NRS 598.0915(5), and NRS 598.0923(3) by Misrepresenting that Its Addresses Would Not Be Used as a Factor in a Credit Score.**

78.     Both the Experian Report and Experian Reinvestigation contained a list of addresses for Plaintiff. In both documents, Experian represented that its list of addresses "do not affect your credit score."

79.     However, a consumer receiving a credit score also receives factors, or adverse action codes, that were particularly important factors in the score, which "will relate to the information that was contained within the consumer's credit report when it was scored."[15] A credit score is undisputedly a consumer report.[16] Experian's internal policies – which it has refused to produce in this case as of the date of this filing – indicate that an item of information is deemed communicated on a credit score if its omission impacts a credit score.[17]

---

[15] May 24, 2013 Rebuttal Report of Kimberly Hughes, *Toliver v. Experian*, *Toliver v. Experian*, No. 12-cv-2436, ECF Dkt 42-8, at 9 (S.D. Tex. June 14, 2013) ("*Toliver* Expert Report").

[16] *See, e.g.*, *Reynolds*, 435 F.3d at 1094.

[17] *See Cardinali*, ECF Dkt. 140, at 13 & n.105 (D. Nev. Feb. 19, 2019) (citing Experian's CIS Compliance Standards: FCRA Core).

FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEFJURY TRIAL DEMANDED - 20

80. Experian's own list of score factor codes indicates that numerous credit scoring products include address information as potential "risk factors."[18]  Moreover, it is axiomatic that addresses can serve as a factor in determining risk premiums for insurance[19] or eligibility for employment.[20]

81. Through these misrepresentations, Experian intended to induce Plaintiffs to overlook that address information as "not important" because Experian misinformed them that their address information would *not* impact their credit score, when in fact it might.

82. Therefore, in representing that its reported address information would not serve as factor in a credit score, Experian violated Section 1681g(a)(1), as its representation had had the tendency to confuse ordinary consumers.  Experian's disclosures also violated Nevada state law and constituted a deceptive trade practice under NRS 598.0915(5) and 598.0923(3). Under NRS 41.600, any violation of NRS 598.0915 or 598.0923 may be brought under NRS 41.600.

***Experian Failed to Disclose Its "Behavioral" Data, in Violation of Section 1681g(a)(1).***

---

[18] *See, e.g.*, Nov. 20, 2014 Experian File One Appendix, *Shaw v. Experian*, No. 16-56587, Dkt. 40-1, at 129, 139-40, 142-43, 146 of 1185 (C.A.9 Sept. 1, 2017) ("2014 File One Appendix"); *Reynolds*, 435 F.3d at 1094 (noting that a response from a consumer reporting agency indicating that it did not have enough information to generate a credit score could qualify as a consumer report).  In light of these factors, Experian's statement that that the address listings "do not affect your credit score" is a misrepresentation.

[19] *See, e.g.*, DMV.org, *Car Insurance Rates 101*, available at https://www.dmv.org/insurance/auto-insurance-rates-101.php (last visited Mar. 5, 2019).

[20] *See, e.g.*, U.S. Const. Art. II, Section 1, Clause 6 (noting that the President must be a natural-born citizen); *see also* City of Boston, *Residency Requirements for City Workers*, available at https://www.boston.gov/departments/human-resources/residency-requirements-city-workers (last visited Mar. 5, 2019) ("Anyone can apply to work for the City, but you must be a resident by your first day of work.  The City passed an ordinance in 1994 that states all workers have to show proof of their residency each year.").

FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEFJURY TRIAL DEMANDED - 21

83.   On information and belief, Experian amasses and maintains an enormous amount of "behavioral" data on consumers, such as household income, purchase history, employment history, education history, type of residence, and even whether an individual is a "dog" or "cat" person.  In particular, Experian has created a credit product known as "OmniView," which it represents is capable of localizing that data at the individual level, as well as "ConsumerView," ostensibly a marketing database.  Experian describes ConsumerView as "the world's largest consumer database," which contains "thousands of attributes on more than 300 million consumers and 126 million households."  Experian has represented to the Ninth Circuit Court of Appeals that it maintains the ConsumerView database (formerly known as InSource) since 1998.[21]

84.   On information and belief, Experian has also created a credit product known as "TrueTouch," which it represents as having the ability to segment consumers into those who are, *inter alia*, (1) tech-savvy, (2) price-cautious, (3) status-focused, (4) adventurous, and (5) impulsive.[22]  Experian markets this data to third parties; it also appears to provide this data for use in the ConsumerView database.[23]  Given that ConsumerView is advertised

---

[21] *See Experian Information Solutions, Inc. v. Nationwide Marketing Services, Inc.*, No. 16-16987, Dkt. 30, at 3 (C.A.9 June 7, 2017).  *But see Alexander v. Equifax Information Services, LLC*, No. 17-cv-139-APG-NJK, ECF Dkt. 97, at 5, 6 (D. Nev. Jan. 10, 2018) ("the ConsumerView marketing database . . . [is] owned by non-party Experian Marketing Services," and that nothing in the FCRA requires Experian to "provide consumers with such information *collected and stored* by a separate affiliate such as non-party Experian Marketing Services.").

[22] *See* https://www.experian.com/assets/marketing-services/product-sheets/true-touch.pdf, at 1-2 (last visited Feb. 18, 2018).

[23] *See* https://www.experian.com/assets/dataselect/brochures/consumerview.pdf, at 6 (last visited Feb. 18, 2018).

FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEFJURY TRIAL DEMANDED - 22

as having the "freshest" data on "more than 300 million individuals,"[24] on information and belief the information in Experian's TrueTouch database contained information regarding Plaintiff.

85.   Information from these behavioral databases can be included on a consumer report.  For example, Experian sells a suite of services called "collection advantage." [25]   The "Collection Advantage" services permit the user to combine data from Experian's File One database and a database known as "MetroNet."[26]  According to Experian, the MetroNet "core" database contains "demographic information from INSOURCE[], the nation's largest repository of consumer marketing demographic data."[27]  On information and belief, INSOURCE contains additional "behavioral" data, such as a "Living-unit structure," which "recognizes family members independent of surname and can even identify roommates and group settings."[28]

86.   On information and belief, Experian has provided this "behavioral" data to third parties, either directly or indirectly, who in turn sells the data to third party credit decision-makers.

_____

[24] *See id.* at 3.
[25] Experian, Collection Advantage, available at

http://www.experian.com/assets/consumer-information/product-sheets/2016/pscollection-

advantage-121216.pdf (last visited Aug. 30, 2018).
[26] Experian, MetroNet, available at https://www.experian.com/assets/consumerinformation/

product-sheets/metronet.pdf (last visited Aug. 30, 2018).
[27] *See id.*
[28] Experian, Insource, available at http://www.experian.com/assets/marketingservices/

product-sheets/insource.pdf (last visited Aug. 30, 2018).

FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEFJURY TRIAL DEMANDED - 23

87. However, not all of this highly personal, comprehensive, and invasive "behavioral" data from Experian's "ConsumerView" Database appeared on Plaintiff's Experian Report or Experian Report, giving Plaintiff no opportunity to meaningfully review this data, or seek to correct any inaccuracies, as Section 1681g entitled her to do. Experian's failure to disclose all information it maintained regarding Plaintiff caused her to suffer a concrete informational injury.

88. Experian's failure to disclose this behavioral data to Plaintiff in its Section 1681g disclosures rendered these disclosures fundamentally incomplete, misleading, and confusing, and violated Plaintiff's statutorily protected right to privacy.

### *Alternatively, Experian Violated Section 1681g(a)(3) and NRS 598C.*

89. Alternatively, if contrary to Experian's representations to the Ninth Circuit it did not in fact store its "behavioral" data itself, then it violated Section 1681g(a)(3) of the FCRA, which requires it to disclose the names of all persons who procured a consumer report for any purpose during the six-month period preceding the date of the request. There is no indication that any of the "soft" inquiries on Plaintiff's Experian Report corresponded with transmission of this "behavioral" data, even though Experian routinely advertises that its behavioral products are both comprehensive in scope and contain up-to-date information.

90. Experian's failure to disclose the name of the entity which obtained this information would also alternatively violate NRS 598C.130, which provides that Experian must disclose the name of any third party to whom it had transferred information regarding her.

91. Experian's violations of Section 1681g(a)(3) and NRS 598C.130 totally deprived her of any ability to understand and appreciate the types of persons who had obtained her private credit information.

FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEFJURY TRIAL DEMANDED - 24

***Experian Failed to Adequately Disclose the Source of Its Names and Addresses, in Violation of Section 1681g(a)(2).***

92.    Section 1681g(a)(2) requires a CRA to disclose the sources information in the CRA's file, with certain exceptions not relevant here.  Information about the sources of information better enables the consumer to determine which furnisher is responsible for any inaccurate or fraudulent reporting, and to follow up with that person directly if desired.

93.    While the Experian Report and Experian Reinvestigation contained name and address information for Plaintiff, it did not identify those sources in plain English.  Instead, Experian identified the sources through cryptic, numeric codes, which deprived Plaintiff of any ability to determine its accuracy.  Consequently, Experian violated Section 1681g(a)(2).

94.    When Plaintiff directly challenged the address information, Experian was no less opaque.  For example, in both the Experian Report and the Experian Reinvestigation, Experian told that "we store address information as it is sent to us by your credit grantors or from information contained in public records."  However, Experian did not specify in plain English which specific source of information it had used to obtain the address information Plaintiff had disputed except through their unrecognizable numeric codes, thus frustrating Plaintiff's ability to actually contact these sources to dispute the information.  In fact, five of the seven address codes – 0632113225, 0175119109, 0178326260, 0173961313, and 0173834675 – were completely absent anywhere on Plaintiff's Experian Report or Experian Reinvestigation.

95.    For Experian's list of names, Experian provided no explanation of what source corresponded to its "name identification number[s]" at all.

FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEFJURY TRIAL DEMANDED - 25

96. Experian's confusing disclosures confounded Plaintiff's ability to actually follow up with the sources of information to dispute inaccurate information. In so doing, Experian violated Section 1681g(a)(2), which required Experian to disclose the "source" of information for the disputed addresses in a manner which was not confusing to an average consumer like Plaintiff.

97. The statutory language of Section 1681g(a)(2) unequivocally requires disclosure of the source of information, which Experian must make to a consumer clearly and accurately. Experian knows that it must produce its disclosures in a manner which is understandable to consumers. In *Shaw v. Experian*, the Ninth Circuit adopted Experian's argument that it did not have to disclose the "bits and bytes" of data in its internal systems.[29] Experian's use of generic identification numbers confounds its own stated positions, as well as the Ninth Circuit's controlling opinion in *Shaw*.

### Experian's Violations of Section 1681g(a)(1), 1681g(a)(2), 1681g(a)(2), and 1681e(b) Were both Negligent and Willful.

98. Experian's misrepresentations, omissions, and violations of Sections 1681g(a)(1), 1618g(a)(2), 1681e(b), and alternatively Section 1681g(a)(3), had the tendency to confuse average consumers like Plaintiff. Experian's reporting of these fundamentally inconsistent and confusing reporting was willful because Experian knows the types of credit information it offers to third parties; knows the sources of its reported information; knows

---

[29] *See Shaw*, 891 F.3d at 758-60.

how it stores "behavioral" data or, alternatively, the persons who have accessed that data; and has complete control over the format and presentation of its consumer disclosures.

99.    These statutory requirements are clear and explicit, and Experian's pattern of conduct recklessly disregarded them.

100.   Additionally, Experian's conduct was at least negligent, and Plaintiff's creditworthiness has also been damaged. For example, the presence of a bankruptcy is a major factor in credit scoring models. Experian itself acknowledges that bankruptcy can be a significant factor.[30] Payment history is a major factor in credit scoring models. Experian's in-house expert has claimed that a consumer's payment history makes up 35% of the FICO score.[31] Experian itself acknowledges that "Payment history for loans and credit cards" are one of the factors generally affected.[32] In fact, Experian recognizes that payment history is the "most influential" factor for both FICO score factors and for VantageScore, another widely used credit reporting product.[33]

101.   Unsurprisingly, Experian's own list of "score factors" in its 2014 File One Appendix indicates the presence of numerous coded "Adverse Action Reasons[s]" which suggest that the reporting of a bankruptcy can serve as a significant factor in establishing a credit score.[34]

---

[30] Experian, *What Is a Good Credit Score?*, available at https://www.experian.com/blogs/ask-experian/credit-education/score-basics/what-is-a-good-credit-score/ (last visited Feb. 22, 2019).

[31] May 24, 2013 Rebuttal Report of Kimberly Hughes, *Toliver v. Experian*, *Toliver v. Experian*, No. 12-cv-2436, ECF Dkt 42-8, at 7 (S.D. Tex. June 14, 2013) ("*Toliver* Expert Report").

[32] Experian, *What Is a Good Credit Score?*, available at https://www.experian.com/blogs/ask-experian/credit-education/score-basics/what-is-a-good-credit-score/ (last visited Feb. 22, 2019).

[33] *Id.*

[34] *See generally* Nov. 20, 2014 Experian File One Appendix, *Shaw v. Experian*, No. 16-56587, Dkt. 40-1, at 125 of 1185 (C.A.9 Sept. 1, 2017) ("2014 File One Appendix") (noting an adverse action

FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEFJURY TRIAL DEMANDED - 27

102. These "score factors" also indicate the presence of numerous coded "Adverse Action Reasons[s]" which suggest that payment history on an account can serve as a significant factor in establishing a credit score.[35] One example of a model which considers this criteria – which is by no means exhaustive – is Experian/Fair Isaac Insurance Risk Model.[36]

103. Non-exhaustive examples of these risk factors include "Too many accounts not paid on time in the last two years,"[37] that the time since the most recently reported delinquency or derogatory notation on a trade or account is too short,[38] or the time since a delinquency is "too recent or unknown,"[39] the "recency of [a] delinquent or derogatory account,"[40] the length of time since an account was not paid as agreed,[41] the worst delinquency occurring on any account within the last three years,[42] and the length of time since the most recent delinquency.[43] Several other models consider the "frequency of delinquency."[44] Others consider the trade activity for the last 36 months.[45] And Experian's VantageScore model

---

reason as "Time since most recent bankruptcy is too short."). As noted above, a credit score is undisputedly a consumer report. *See, e.g.*, *Reynolds*, 435 F.3d at 1094.

[35] *See generally* Nov. 20, 2014 Experian File One Appendix, *Shaw v. Experian*, No. 16-56587, Dkt. 40-1, at 123-59 of 1185 (C.A.9 Sept. 1, 2017) ("2014 File One Appendix").

[36] *Id.* at 135-36 of 1185.

[37] *Id.* at 124 of 1185 (Bankruptcy Plus Model).

[38] *Id.* at 125 of 1185 (Bankruptcy Plus Model); *id.* at 18 (Extended View Score)

[39] *Id.* at 138 of 1185 (Experian/Fair Isaac Advanced Risk Models).

[40] *Id.* at 150 of 293 (Experian's Scorex Plus). *See also id.* at 1153 of 1185 (Telecommunications, Energy & Cable Risk Model, considering recency of account delinquencies).

[41] *Id.* at 135 of 1185 (Experian's Fair Isaac Insurance Risk Models).

[42] *Id.* at 151 of 1185 (Scorex Plus 2).

[43] *Id.* at 153 of 1185 (Telecommunications, Energy & Cable Risk Model).

[44] *Id.* at 130 of 1185 (Experian/Fair Isaac Advanced Risk Models); *id.* at 135 of 1185 (Experian's Fair Isaac Insurance Risk Models); *id.* at 137 of 1185 (Experian/FICO Mortgage).

[45] *Id.* at 141 of 1185 (Fraud Shield Score Plus); *id.* at 145 of 1185 (Never Pay Score).

FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEFJURY TRIAL DEMANDED - 28

considers whether the worst status in *recent months* on revolving accounts was delinquent or derogatory, and whether there are too many accounts with a delinquent or derogatory status in recent months.[46]

104.  As noted above, Experian's own list of score factor codes indicate that numerous credit scoring products include address information as potential "risk factors."[47]  Similarly, a consumer's name can be a risk factor on Experian credit scores.[48]  Moreover, it is axiomatic that addresses can serve as a factor in determining risk premiums for insurance[49] or eligibility for employment.[50]

105.  Finally, Experian's score factors clearly suggest that "behavioral" data can form the basis of a credit score.  Among many examples, Experian add education,[51] length of job,[52] and the type of residence a consumer lives in,[53] can all be score factors.  Experian also weighs

[46] *Id.* at 157-58 of 1185.

[47] *See, e.g.*, Nov. 20, 2014 Experian File One Appendix, *Shaw v. Experian*, No. 16-56587, Dkt. 40-1, at 129, 139-40, 142-43, 146 of 1185 (C.A.9 Sept. 1, 2017) ("2014 File One Appendix"); *Reynolds*, 435 F.3d at 1094 (noting that a response from a consumer reporting agency indicating that it did not have enough information to generate a credit score could qualify as a consumer report).  In light of these factors, Experian's statement that that the address listings "do not affect your credit score" is a misrepresentation.

[48] *See* 2014 File One Appendix, at 129, 140 of 1185.

[49] *See, e.g.*, DMV.org, *Car Insurance Rates 101*, available at https://www.dmv.org/insurance/auto-insurance-rates-101.php (last visited Mar. 5, 2019).

[50] *See, e.g.*, U.S. Const. Art. II, Section 1, Clause 6 (noting that the President must be a natural-born citizen); *see also* City of Boston, *Residency Requirements for City Workers*, available at https://www.boston.gov/departments/human-resources/residency-requirements-city-workers (last visited Mar. 5, 2019) ("Anyone can apply to work for the City, but you must be a resident by your first day of work.  The City passed an ordinance in 1994 that states all workers have to show proof of their residency each year.").

[51] *See, e.g.*, 2014 File One Appendix, at 140 of 1185.

[52] *See, e.g.*, *id.* at 140.

[53] *See, e.g.*, *id.*

FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEFJURY TRIAL DEMANDED - 29

the length of time since issuance of a social security number (an issue which disproportionately impact recently naturalized citizens).[54] In fact, Experian's "emerging credit score" considers the presence of a "dispute" to be an adverse reason.[55]

106.  Therefore, by inaccurately and confusingly reporting Plaintiff's bankruptcy-inclusion dates, account history, names, addresses, and omitting any "behavioral" data altogether, Experian damaged Plaintiff's creditworthiness, by either reporting inaccurate and confusing information, or totally depriving Plaintiff of any meaningful opportunity to review and correct that data.

107.  Accordingly, Plaintiff is eligible for actual, statutory, and punitive damages, as well as an award of attorney's fees and costs.  *See* 15 U.S.C. §§ 1681n, 1681o.

***Experian's Violations of NRS 598, 598C, and 41.600 Entitle Plaintiff to an Award of Damages and Equitable Relief.***

108.  Experian's misrepresentations, omissions, and violations of NRS 598, 41.600, and alternatively NRS 598C, were willful in that Experian actively misrepresented the purposes for which it would provide Plaintiff's credit information; has complete control over the presentation of its soft inquiries; and violated both state and federal laws in making its disclosures.

109.  Accordingly, Plaintiff is eligible to recover her damages, which include but not limited to lost time, transportation costs, and emotional distress.  *See* NRS 41.600(3)(a).

---

[54] *See id.* at 139 of 1185.
[55] *See id.* at 129 of 1185.

FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEFJURY TRIAL DEMANDED - 30

110. Plaintiff is also entitled to an award of punitive damages for Experian's Section NRS 598C violations. *See* NRS 598C.190(2). Plaintiff is also entitled to an award of reasonable attorney's fees and costs. *See* NRS 598C.190(3); NRS 41.600(3)(c).

111. Plaintiff is also entitled to equitable injunctive relief in the form of a court order requiring Experian to provide her disclosures in a form which was clear and accurate, as well as an order preventing Experian from providing her credit information to third parties for impermissible purposes. *See* NRS 41.600(3)(b).

**FIRST CAUSE OF ACTION**
**VIOLATION OF THE FAIR CREDIT REPORTING ACT**
**ALL DEFENDANTS**

112. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

113. The foregoing acts and omissions related to Defendants constitute numerous and multiple negligent, willful, reckless or negligent violations of the FCRA, including but not limited to each and every one of the above-cited provisions of the FCRA, 15 U.S.C. § 1681.

114. As a result of each and every negligent violation of the FCRA, Plaintiff is entitled to actual damages as the Court may allow under 15 U.S.C. § 1681o; and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2).

115. As a result of each and every willful violation of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(1); statutory damages pursuant to 15 U.S.C. § 1681n(a)(1); punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3) from Defendants.

FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEFJURY TRIAL DEMANDED - 31

116.    As a result of each and every negligent noncompliance of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681o(a)(1); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2) from Defendants.

**SECOND CAUSE OF ACTION**
**VIOLATION OF NRS 41.600**
**EXPERIAN ONLY**

117.    Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

118.    The foregoing acts and omissions related to Experian constitute numerous and multiple negligent, willful, or reckless violations of the FCRA, NRS 598, and NRS 598C, and thus constituted consumer fraud for purposes of NRS 41.600.

119.    Consequently, Plaintiff is entitled to recover from Experian her damages pursuant to NRS 41.600(3)(A); any equitable relief that the Court deems appropriate pursuant to NRS 41.600(3)(b), which should consist of injunctions as set forth in this Complaint; and an award of costs of litigation and reasonable attorney's fees, pursuant to NRS 41.600(3)(c).

**THIRD CAUSE OF ACTION**
**VIOLATION OF NRS 598C**
**EXPERIAN ONLY**

120.    Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

121.    The foregoing acts and omissions related to Experian constitute numerous and multiple negligent, willful, or reckless violations of NRS 598C, including but not limited to each and every one of the above-cited provisions of NRS 598C.

FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEFJURY TRIAL DEMANDED - 32

122. As a result of each and every negligent violation of NRS 598C, Plaintiff is entitled to recover from Experian her actual damages as the Court may allow pursuant to NRS 598C.200 (1); and reasonable attorney's fees and costs pursuant to NRS 598C.200(2).

123. As a result of each and every willful violation of NRS 598C, Plaintiff is entitled to recover from Experian her actual damages as the Court may allow pursuant to NRS 598C.190(1); punitive damages as this Court may allow, pursuant to NRS 598C.190(2); and reasonable attorney's fees and costs pursuant to NRS 598C.190(3).

**PRAYER FOR RELIEF**

Plaintiff respectfully requests the Court grant Plaintiff the following relief against Defendants:

**FIRST CAUSE OF ACTION**
**VIOLATION OF THE FAIR CREDIT REPORTING ACT**
**ALL DEFENDANTS**

- an award of actual damages pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1);

- an award of statutory damages pursuant to 15 U.S.C. § 1681n(a)(1);

- an award of punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2);

- award of costs of litigation and reasonable attorney's fees, pursuant to 15 U.S.C. § 1681n(a)(3), and 15 U.S.C. § 1681(o)(a)(2) against Defendants for each incident of negligent noncompliance of the FCRA; and

- any other relief the Court may deem just and proper.

//

//

//

//

FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEFJURY TRIAL DEMANDED - 33

## SECOND CAUSE OF ACTION
## VIOLATION OF NRS 41.600
## EXPERIAN ONLY

- an award of damages pursuant to NRS 41.600(3)(A);

- any equitable relief that the Court deems appropriate pursuant to NRS 41.600(3)(b), which should consist of injunctions as set forth in this Complaint;

- an award of costs of litigation and reasonable attorney's fees, pursuant to NRS 41.600(3)(c); and

- any other relief the Court may deem just and proper.

## THIRD CAUSE OF ACTION
## VIOLATION OF NRS 598C
## EXPERIAN ONLY

- an award of actual damages pursuant to NRS 598C.190(1) and NRS 598C.200(1);

- an award of punitive damages pursuant to NRS 598C.190(2);

- award of costs of litigation and reasonable attorney's fees, pursuant to NRS 598C.190(3) and NRS 598C.200(2); and

- any other relief the Court may deem just and proper.

//

//

//

//

//

//

//

FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEFJURY TRIAL DEMANDED - 34

**TRIAL BY JURY**

Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Dated March 12, 2019

/s/ *Miles N. Clark*

Matthew I. Knepper, Esq.
Nevada Bar No. 12796
Miles N. Clark, Esq.
Nevada Bar No. 13848
KNEPPER & CLARK LLC
10040 W. Cheyenne Ave., Suite 170-109
Las Vegas, NV 89129

David H. Krieger, Esq.
Nevada Bar No. 9086
HAINES & KRIEGER, LLC
8985 S. Eastern Ave., Suite 350
Henderson, NV 89123

*Counsel for Plaintiff*

FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEFJURY TRIAL DEMANDED - 35