# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

Dawn Mintun,

     Plaintiff

v.

Equifax Information Services, LLC; Experian Information Solutions, Inc.; and PHH Mortgage Ice Center,

     Defendants

Case No.: 2:19-cv-00033-JAD-NJK

**Order Granting in Part Motion to Dismiss and Granting Motion for Leave to Submit Supplemental Authority**

[ECF Nos. 26, 58]

Dawn Mintun sues consumer reporting agency Experian Information Solutions, Inc., claiming that Experian violated its duties to disclose under the Fair Credit Reporting Act (FCRA)[1] and Nevada law.[2] She also claims that Experian violated its duty under the FCRA to reasonably investigate her dispute about the accuracy of information that it furnished in consumer reports on her. Mintun further contends that Experian failed to use FCRA-mandated reasonable procedures to ensure the maximum accuracy of the information that it reported on her and engaged in deceptive trade practices in violation of Nevada law.

Mintun amended her complaint once as a matter of right after Experian moved to dismiss the claims in her original pleading.[3] Experian now moves to dismiss Mintun's amended claims with prejudice, arguing that she has not plausibly stated any claim for which she is entitled to

---

[1] 15 U.S.C. §§ 1681 et seq.

[2] *See generally* ECF No. 19 (first-amended complaint).

[3] ECF Nos. 1 (original complaint), 16 (motion to dismiss), 19 (first-amended complaint).

relief and she failed to plead fraud with the required particularity.[4]  Mintun moves to supplement her response to Experian's dismissal motion with new authority from the Ninth Circuit.[5]

For the reasons discussed below, I grant in part the motion to dismiss and grant the motion to submit supplemental authority without further briefing.  The upshot of my decision on the dismissal motion is that I construe each alleged violation as its own claim for relief, allow Mintun to proceed without amendment on two of her claims, grant her leave to amend four others, and dismiss with prejudice her remaining eight claims.

## Discussion

### A.    Legal standard for dismissal under Rule 12(b)(6)

Federal Rule of Civil Procedure 8 requires every complaint to contain "[a] short and plain statement of the claim showing that the pleader is entitled to relief."[6]  While Rule 8 does not require detailed factual allegations, the properly pled claim must contain enough facts to "state a claim to relief that is plausible on its face."[7]  This "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"; the facts alleged must raise the claim "above the speculative level."[8]  In other words, a complaint must make direct or inferential allegations about "all the material elements necessary to sustain recovery under *some* viable legal theory."[9]

---

[4] ECF No. 26.

[5] ECF No. 58.  Mintun does not seek leave to submit further briefing.

[6] Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

[7] *Twombly*, 550 U.S. at 570.

[8] *Iqbal*, 556 U.S. at 678.

[9] *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1989)) (emphasis in original).

District courts employ a two-step approach when evaluating a complaint's sufficiency on a Rule 12(b)(6) motion to dismiss. The court must first accept as true all well-pled factual allegations in the complaint, recognizing that legal conclusions are not entitled to the assumption of truth.[10] Mere recitals of a claim's elements, supported by only conclusory statements, are insufficient.[11] The court must then consider whether the well-pled factual allegations state a plausible claim for relief.[12] A claim is facially plausible when the complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct.[13] A complaint that does not permit the court to infer more than the mere possibility of misconduct has "alleged—but not shown—that the pleader is entitled to relief," and it must be dismissed.[14]

**B.      Factual allegations**

I begin by identifying some of the well-pled factual allegations in Mintun's first-amended complaint that are entitled to the assumption of their truth. Because several of Mintun's claims concern her Chapter 13 bankruptcy discharge and her debt to WF/Home PR, I focus on those allegations here. Mintun alleges that she voluntarily filed a petition under Chapter 13 of the Bankruptcy Code on December 20, 2012.[15] The bankruptcy court entered an order confirming her Chapter 13 plan on October 21, 2013.[16] After she completed her Chapter 13 plan, the

---

[10] *Iqbal*, 556 U.S. at 678–79.

[11] *Id.*

[12] *Id.* at 679.

[13] *Id.*

[14] *Twombly*, 550 U.S. at 570.

[15] ECF No. 19 at ¶ 11.

[16] *Id.*

bankruptcy court granted Mintun a discharge on March 7, 2016.[17]  Mintun alleges that her

account with Wells Fargo, which that bank transferred or sold to PHH Mortgage Corporation on

August 6, 2014, was discharged in her bankruptcy.[18]  Mintun does not allege any claims against

Experian for this debt.[19]  Her claims against Experian are based on her debt to WF/Home PR.[20]

Mintun does not expressly allege that her debt to WF/Home PR was discharged in her

bankruptcy, but that is a reasonable inference in light of her other allegations about that debt.[21]

 Mintun contends that Experian provided her with several documents that qualify as

FCRA § 1681g consumer disclosures, including Report No. 1408-8216-13 dated June 30, 2018,

which she calls the "Experian Report," and Report No. 2985-3151-65 dated November 30, 2018,

which she calls the "Experian Reinvestigation."  I refer to these documents as the June

Document and the November Document.[22]

 Experian provides copies of the June Document and the November Document with its

dismissal motion and asks me to consider both in deciding its motion.[23]  Mintun identifies and

repeatedly references the June Document in her first-amended complaint.[24]  She also repeatedly

references the November Document in her pleading.[25]  These documents are integral to Mintun's

---

[17] *Id.*

[18] *Id.* at ¶ 12.

[19] Mintun's claims against Equifax concerned this account.  Those claims have been resolved.

[20] ECF No. 19 at ¶¶ 45–111.

[21] *C.f. id.* at ¶¶ 52–60.

[22] "Report," "disclosure," "consumer's file," and "credit file" are terms of art with defined meanings under the FCRA or its interpretive case law.  By naming the documents that her claims turn on with these labels, Mintun has not charged them with the meanings ascribed to them under the FCRA and case law.  To avoid this confusion, I have eschewed Mintun's labels.

[23] ECF Nos. 26-2 (November Document), 26-3 (June Document).

[24] ECF No. 19 at ¶¶ 49–52, 54, 61–62, 66, 68, 74, 78, 87, 89, 93–94.

[25] *Id.* at ¶¶ 49–51, 54, 58, 62, 68, 74, 78, 93–94.

claims that Experian failed to (1) provide clear and accurate disclosures, (2) take reasonable steps to ensure that the information it reported about her was accurate, and (3) reasonably reinvestigate her dispute. Thus, these documents fall under the doctrine of incorporation by reference and I may consider them in determining Experian's dismissal motion without converting the motion into one for summary judgment.[26]

**C.    Discussion**

Mintun alleges that Experian violated three different sections of the FCRA (§§ 1681e, 1681g, 1681i) and one section of Nevada's consumer-reporting scheme (NRS § 598C.130). She also alleges that these violations constitute deceptive trade practices under Nevada law (NRS §§ 598.0915(f) and 598.0923(3)), for which she can recover as a fraud victim (NRS § 41.600). Mintun lumps all of the alleged violations under three generically pled claims: (1) violation of the FCRA, (2) violation of NRS § 41.600, and (3) violation of NRS Chapter 598C.[27] For the sake of clarity, I refer to each alleged violation as a separate claim for relief.

Except for irrelevant factual differences and two new claims, Mintun's first-amended complaint is nearly identical to the pleadings of plaintiffs in several other FCRA cases that are before me. I have already resolved—with substantial discussion—dismissal motions in two of those cases with points and authorities that are nearly identical to the parties' briefs here.[28] The two similar cases are styled *Slyzko v. Equifax Information Services, LLC* and *Calvillo v.*

---

[26] *See U.S. v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003).

[27] ECF No. 19 at ¶¶ 112–23.

[28] The attorneys who represent either the plaintiffs or Experian in those similar cases also represent either Mintun or Experian here.

*Experian Information Solutions, Inc.*[29]  Nothing about the particular facts of Mintun's case or her

points and authorities has caused me to deviate from the determinations that I reached on the

same issues that were raised in *Slyzko and Calvillo*.  I therefore adopt the reasoning from my

dismissal orders entered in *Slyzko* and *Calvillo*,[30] which I incorporate where appropriate below,

and reach the same determinations on Mintun's similar claims.

### 1.  Failure-to-disclose claims under FCRA § 1681g and NRS § 598C.130

#### a.  Information in the consumer's file

FCRA § 1681g(a)(1) provides that "[e]very consumer reporting agency shall, upon

request, . . . clearly and accurately disclose to the consumer . . . [a]ll information in the

consumer's file at the time of the request" save for full identification numbers and "information

concerning credit scores or any other risk scores or predictors relating to the consumer."[31]  "A

consumer's file includes 'all information on the consumer that is recorded and retained by a

[consumer reporting agency] that might be furnished, or has been furnished, in a consumer report

on that consumer.'"[32]  Mintun claims that Experian failed to properly disclose six items of

information in her file: (1) behavioral data; (2) uses of information that were not permissible

under the FCRA, (3) when and why each soft inquiry was made, (4) that her WF/Home PR

account was "included" in bankruptcy five days after she filed her bankruptcy petition, (5)

account-history data for several of her accounts, and (6) that her address would not affect her

---

[29] *Slyzko v. Equifax Info. Servs, LLC*, No. 2:19-cv-00176 (D. Nev. case docketed on Jan. 30, 2019); *Calvillo v. Experian Info. Sols., Inc.*, No. 2:19-cv-00279 (D. Nev. cased docketed on Feb. 14, 2019).

[30] *Slyzko*, No. 2:19-cv-00176, at ECF No. 66 (D. Nev. Mar. 23, 2020); *Calvillo*, No. 2:19-cv-00279, at ECF No. 48 (D. Nev. Mar. 23, 2020).

[31] 15 U.S.C. § 1681g(a)(1)(A)–(B).

[32] *Shaw v. Experian Info. Sols., Inc.*, 891 F.3d 749, 759 (9th Cir. 2018) (quoting *Cortez v. Trans Union, LLC*, 617 F.3d 688, 711–12 (3d Cir. 2010)).

credit score.  The last item of information—that addresses would not affect her credit score—is one that I have not already addressed at length in any other FCRA case.

### i.  *Behavioral data*

Mintun contends that Experian violated § 1681g(a)(1) when it failed to disclose the behavioral data that it recorded and maintained in her consumer's file.[33]  Mintun's allegations and argument on this topic mirror those of her counterparts in *Slyzko* and *Calvillo*.  I therefore adopt my analyses on this topic from those cases[34] and reach the same determination on Mintun's claim.  This means that, construing the facts in the light most favorable to Mintun and drawing all inferences in her favor, I cannot conclude that she has plausibly alleged that Experian has furnished behavioral data in a consumer report or plans to do so in the future.  The problem is that Mintun does not link the ConsumerView database that she alleges contains her behavioral data to any consumer report that Experian prepared on her—or even consumer reports generally. Paragraph 85 of the first-amended complaint appears to be intended to serve as a bridge between ConsumerView on the one hand and consumer reports on the other, but other than the bald speculation that "[i]nformation from these databases can be included on a consumer report[,]"[35] Mintun alleges no facts to show or allow the reasonable inference that is the case.  She instead alleges that Experian sells a suite of services called "collection advantage," which she contends pulls from Experian's MetroNet and File One databases, and that MetroNet pulls from

---

[33] ECF No. 19 at ¶¶ 83–88.

[34] *Slyzko*, No. 19-cv-176, ECF No. 66 at 9–12; *Calvillo*, No. 19-cv-279, ECF No. 48 at 7–11.

[35] ECF No. 19 at ¶ 85.  The databases alleged here appear to be ConsumerView and the "credit product" called TrueTouch.  Mintun contends that ConsumerView contains information from TrueTouch, and she is informed and believes that TrueTouch contains her "information."  *Id.* at 84.  Mintun's allegations about the TrueTouch database suffer from the same infirmities as her allegations about the ConsumerView database.

Experian's INSOURCE database. But she doesn't allege that her behavioral data is contained in any of those databases. Nor does she allege facts to plausibly show or allow the reasonable inference that any of those products constitutes a consumer report.

These pleading defects require dismissal under Rule 12(b)(1) for lack of constitutional standing and under Rule 12(b)(6) for failing to state a claim upon which relief can be granted. But it is not yet clear to me that these defects cannot be cured by amendment. So I dismiss Mintun's claim that Experian violated § 1681g(a)(1) by failing to disclose her behavioral data without prejudice and with leave to amend if she can plead true facts to show that Experian has furnished behavioral data in a consumer report or plans to do so in the future.

### ii. *Not-permissible purposes*

Mintun contends that Experian violated § 1681g(a)(1) when it failed to disclose the fact that information in her consumer's file "would . . . be made available for purposes not permissible under the FCRA . . . ."[36] Mintun's allegations and argument on this topic mirror those of her counterparts in *Slyzko* and *Calvillo*. I therefore adopt my analyses on this topic in those cases here[37] and reach the same determination on Mintun's claim. Like those plaintiffs, Mintun does not allege that any of her information was actually used for impermissible purposes. She speculates that this occurred because Experian generates something called a "Bullseye report."[38] But Mintun's allegations show that, by providing a Bullseye report, Experian is allowing an information furnisher to review its own data that it has provided to Experian about a consumer. Mintun does not contend that a furnisher's review of the information that it has

---

[36] *Id.* at ¶ 73.

[37] *Slyzko*, No. 19-cv-176, ECF No. 66 at 12–14; *Calvillo*, No. 19-cv-279, ECF No. 48 at 11–13.

[38] *Id.* at ¶ 72.

supplied a consumer reporting agency is an impermissible use of that information under the FCRA. The viability of any such claim is dubious considering that the FCRA imposes duties on information furnishers to report only accurate information and correct and update the information that they report.[39] By essentially pleading Experian's own statements about the Bullseye report as the facts supporting her claim that Experian did not disclose that it allowed Mintun's information to be used for purposes that are not permissible under the FCRA, Mintun has pled herself out of that claim. Because it is wholly speculative and futile, even under her own allegations, Mintun's claim that Experian violated § 1681g(a)(1) by failing to disclose that her information would be made available for not-permissible purposes is dismissed with prejudice and without leave to amend.

### iii. Soft inquiries

Mintun contends that Experian violated § 1681g(a)(1) when it failed to disclose in plain English when any soft inquiry was made and why each soft inquiry was made.[40] Mintun's allegations and argument on this topic mirror those of her counterparts in *Slyzko* and *Calvillo*. I therefore adopt my analyses on this topic in those cases here[41] and reach the same determination on Mintun's claim. Like in the other cases, Experian convincingly argues in its dismissal motion here that Mintun does not allege that Experian has furnished information like soft inquiries on a consumer report or plans to do so in the future, and other courts have acknowledged that Experian simply does not share soft inquiries with third parties.[42] Mintun alleges that soft inquiries are "purportedly" shared only with the consumer and she pleads no facts to show

---

[39] 15 U.S.C. §§ 1681s-2(a)(1)(A), (a)(2)(A)–(B).

[40] ECF No. 19 at ¶¶ 66–70.

[41] *Slyzko*, No. 19-cv-176, ECF No. 66 at 14–15; *Calvillo*, No. 19-cv-279, ECF No. 48 at 13.

[42] ECF No. 26 at 13–14.

otherwise.[43]  Mintun's claim that Experian violated § 1681g(a)(1) by failing to disclose when

and why each soft inquiry was made is dismissed without prejudice and with leave to amend if

she can plead true facts to plausibly show that Experian has furnished soft inquiries on a

consumer report or plans to do so in the future.

### iv.  *Included-in-bankruptcy date*

Mintun contends that Experian violated § 1681g(a)(1) when it stated on the June

Document that her debt to WF/Home PR was "included" in her Chapter 13 bankruptcy on

December 25, 2012, which was five days after the date of her bankruptcy petition.[44]  Mintun's

allegations and argument on this topic mostly mirror those of her counterparts in *Slyzko* and

*Calvillo*.[45]  I therefore adopt my analyses on this topic in those cases here[46] and reach the same

determination on Mintun's claim.  To the extent that Mintun seeks to hold Experian liable under

§ 1681g(a)(1) for disclosing factually incorrect information that is in her consumer's file, she

does not allege a colorable claim under this statute.  And her allegation that the included-in-

bankruptcy date is an unclear or incomprehensible item of information is belied by her express

allegation that Experian's disclosure allowed her to identify inaccurate information in her credit

file.[47]  Because it is futile under her own allegations, Mintun's claim that Experian violated

---

[43] *Compare* ECF No. 19 at ¶ 66, *with id.* at ¶¶ 67–70.

[44] *Id.* at ¶ 54.

[45] Mintun's claim differs from the claims in *Slyzko* and *Calvillo* because those plaintiffs alleged that Experian's disclosure stated that their debts were included in bankruptcy after their discharge dates.  But this factual distinction does not help Mintun state a colorable claim when the *Slyzko* and *Calvillo* plaintiffs did not.  In fact, it cuts against her argument because it is the discharge that changes a debt's effect, not the mere filing of a bankruptcy petition.

[46] *Slyzko*, No. 19-cv-176, ECF No. 66 at 15–17; *Calvillo*, No. 19-cv-279, ECF No. 48 at 13–15.

[47] *Id.*

§ 1681g(a)(1) by disclosing that her WF/Home PR debt was included in bankruptcy after her petition date is dismissed with prejudice and without leave to amend.

### v. *Account-history data*

Mintun contends that Experian violated § 1681g(a)(1) when it failed to disclose the plain-English descriptions for the payment-received dates listed in the account-history tables for an unspecified number of her accounts.[48] Mintun's allegations and argument on this topic mirror those of her counterpart in *Calvillo*. I therefore adopt my analysis on this topic in that case here[49] and reach the same determination on Mintun's claim. Like in *Calvillo*, Mintun pleads no facts to show that she was confused by this information or its format. When all of the information in the account-history table is viewed together, as intended with a table format, it is clear that the two-digit numerals in the line providing the "DPR" or "[d]ate payment received" data that Mintun complains about identify the days that the furnisher received Mintun's payment, i.e., "May04" is May 4th and "Apr13" is April 13th.[50] Though similarly formatted, it is also clear that the two-digit numerals listed in headings of the account-history table identify the year when the information listed in the column below was reported, i.e., "May18" is May 2018 and "Apr18" is April 2018.[51]

Construing the facts in the light most favorable to Mintun and drawing all inferences in her favor, I cannot conclude that she has shown that it is plausible that the account-history tables

---

[48] *Id.* at ¶¶ 61–65.

[49] *Calvillo*, No. 19-cv-279, ECF No. 48 at 13.

[50] ECF No. 26-3 at 4 (I refer in the text to the account-history table for the second Bank of America account listed on this page of the June Document).

[51] *Id.*

and their notations are not "clear and comprehensible to the average consumer."[52]  Mintun's claim that Experian violated § 1681g(a)(1) by not disclosing plain-English descriptions of the notations in the account-history table is dismissed with prejudice and without leave to amend.

### vi.  *Statement that addresses don't affect credit scores*

Mintun alleges that Experian violated § 1681g(a)(1) when it disclosed on the June Document and November Documents that the addresses listed "do not affect your credit score."[53]  Mintun has not plausibly alleged that the November Document constitutes a "disclosure" that Experian made in response to her request for information under § 1681g(a).  What remains is the June Document, but Mintun has not shown that Experian has a duty to disclose this information under §1681g(a)(1).  FCRA § 1681g(a)(1)(B), in fact, states that "nothing in this paragraph [§ 1681g(a)(1)] shall be construed to require a consumer reporting agency to disclose to a consumer any information concerning credit scores or any other risk scores or predictors relating to the consumer."  So, § 1681g(a)(1) does not appear to be a good fit for Mintun's claim.  Even if I look past these deficiencies at this stage, I'm left to contend with the fact that Mintun has not plausibly alleged that Experian's statement is unclear or inaccurate.  The June Document doesn't state that address information is never a factor in credit scores, it says that "these listings do not affect your credit score," and the "listings" are more than a series of addresses.[54]  Thus, Mintun's claim that Experian violated § 1681g(a)(1) when it disclosed that addresses do not affect credit scores is dismissed with prejudice and without leave to amend.

---

[52] *Shaw*, 891 F.3d at 760.

[53] ECF No. 19 at ¶ 78.

[54] ECF No. 26-3 at 12.

### b. *Sources of the information in the consumer's file*

Section 1681g(a)(2) provides that every consumer reporting agency must, upon the consumer's request and with limited exceptions that are not relevant here, "clearly and accurately disclose to the consumer" "[t]he sources of the information" that is contained in their consumer's file. Mintun contends that Experian violated § 1681g(a)(2) when it failed to adequately disclose "in plain English" the sources for her name-and-address information in her consumer's file.[55] She further contends that Experian disclosed this information using "cryptic, numeric codes [that] deprived [her] of the ability to determine [the information's] accuracy or "dispute inaccurate information."[56] Like in *Slyzko*, Experian's three arguments for why this claim fails are without merit.[57] Thus, Mintun may proceed on her claim that Experian violated § 1681g(a)(2) when it failed to disclose the sources of her name-and-address information in plain English.

### c. *Procurers of consumer reports*

Mintun alternatively alleges that, if it is determined that Experian does not "store" her behavioral data itself, then it violated § 1681g(a)(3)'s and NRS § 598C.130(2)(b)'s requirements that it disclose the identity of all persons who procured her consumer report, because the documents it provided her did not include any soft inquiries corresponding with the transmission of her behavioral data to any third party.[58] Experian moves to dismiss these alternative claims on several grounds.[59] I understand these claims to alternatively allege that Experian collected

---

[55] ECF No. 19 at ¶¶ 92–97.

[56] *Id.* at ¶ 93.

[57] *See Slyzko*, No. 2:19-cv-00176, at ECF No. 66 at 17–18.

[58] ECF No. 19 at ¶¶ 89–91.

[59] ECF No. 26 at ¶ 17.

Mintun's behavioral data but did not store it; rather, Experian transmitted that data to a third party like Experian Marketing. The transmission of data from Experian to a third party would be a soft inquiry. With this understanding and for the reasons discussed above in section C(1)(a)(iii), I dismiss Mintun's alternative claims without prejudice and with leave to amend if she can plead true facts to plausibly show that Experian has furnished soft-inquiry information on a consumer report or plans to do so in the future.

### 2. *Failure-to-use-reasonable-procedures claims under FCRA § 1681e(b)*

Mintun alleges that Experian violated its duty under § 1681e(b) to use reasonable procedures to assure the maximum possible accuracy of information contained in consumer reports when it reported that her WF/Home PR account was included in bankruptcy after the date of her bankruptcy petition.[60] She contends that this factually incorrect information was included on the June Document and, despite her disputing that item of information to Experian, was also included on the November Document.[61] It can be reasonably inferred from Mintun's allegations and the face of the November Document that it is a consumer report that Experian sent Mintun under § 1681i(a)(6)(B)(ii). Mintun has plausibly alleged that Experian's report of a post-petition included-in-bankruptcy date for her WF/Home PR account is inaccurate for the FCRA's purposes because it is either patently wrong or materially misleading. Mintun may therefore proceed on her claim that Experian violated § 1681e(b) when it reported on the November Document that her WF/Home PR account was included in bankruptcy after her petition date.

---

[60] ECF No. 19 at ¶ 59.

[61] *See id.* at ¶¶ 57–58.

Mintun also alleges that Experian removed "all indications that [her] debts were included in her bankruptcy for which she had obtained a discharge[,]"[62] but she doesn't identify what accounts Experian removed the bankruptcy notations from and the November Document that Experian provides shows that the two of her "accounts that may be considered negative[,]" including her WF/Home PR account, were reported as having been "[d]ischarged through Bankruptcy Chapter 13."[63]  Because it is futile, Mintun's claim that Experian violated § 1681e(b) when it removed all bankruptcy notations from credit reports on her is dismissed with prejudice and without leave to amend.

### 3.    *Failure-to-reinvestigate claim under FCRA § 1681i*

Mintun claims that Experian violated § 1681i when it "removed all indications that [her] debts were included in her bankruptcy for which she had obtained a discharge . . . ."[64]  For the reasons explained immediately above, Mintun's claim is dismissed with prejudice and without leave to amend.

### 4.    *Fraud claims under NRS Chapter 598*

Mintun contends that Experian violated NRS §§ 598.0915(5) and NRS 598.0923(3) when it misrepresented that her data would be used only for purposes that are permissible under that Act.[65]  Mintun has effectively pled herself out of a viable claim that Experian failed to disclose that her information would be made available for purposes that are not permissible under the

---

[62] *Id.* at ¶¶ 59–60.

[63] ECF No. 26-2 at 4; *accord* ECF No. 26 at 6 n.3.

[64] ECF No. 19 at ¶ 59.

[65] ECF No. 19 at ¶¶ 75–77.

FCRA,[66] so her claims under NRS Chapter 598 for the same allege behavior are dismissed with prejudice and without leave to amend.

Mintun also contends that Experian violated these same Nevada statutes when it stated on the June Document and November Document that the "list of addresses 'do not affect your credit score.'"[67]  The November Document contains no such statement.[68]  The June Document does contain the language that Mintun quotes.[69]  Mintun alleges that this statement is false because Experian's "own list of score factors codes indicates that numerous credit scoring products include address information as potential 'risk factors.'"[70]  But the June Document doesn't state that address information is never a factor in credit scores.  Rather, it states that "[t]hese listings do not affect your credit score."[71]  The "listings" are more than a series of addresses.  Each of the seven "listings" on the June Document is comprised of an "address" followed by "type" and "geo code," which the document explains identifies the state, county, census tract, block group and Metropolitan Statistical Area associated with each address," and an "address identification number," which the document explains is how Experian's "system identifies the address and the course of that address, such as a creditor, court or potential creditor."[72]  Because her allegations do not square with the actual language of either the June Document or the November Document, Mintun's claims that Experian violated NRS §§ 598.0915(5) and NRS 598.0923(3) when it

---

[66] *See* discussion *supra* at section C(1)(a)(ii).

[67] ECF No. 19 at ¶ 78.

[68] ECF No. 26-2.

[69] ECF No. 26-3 at 12.

[70] ECF No. 19 at ¶ 80.

[71] ECF No. 26–3 at 12.

[72] *Id.*

misrepresented that addresses do not affect credit scores are dismissed with prejudice and without leave to amend.

### 5. *Willfulness and actual-damage allegations*

Mintun contends that Experian's violations were either willful or negligent,[73] and she pleads that she suffered actual damages, including harm to her creditworthiness, lost time, transportation costs, and emotional distress.[74]  Experian argues that Mintun's willfulness allegations are not sufficiently pled, her time-lost damage is not recoverable as a matter of law, and her emotional-distress allegations are vague and conclusory.[75]  I address these arguments only in the context of Mintun's two claims that I have determined she may proceed on, because I have dismissed all of her other claims.  Those claims allege that Experian violated (1) § 1681g(a)(2) when it failed to disclose the sources of her name-and-address information in plain English, and (2) § 1681e(b) when it reported on the November Document that her WF/Home PR account was included in bankruptcy after her petition date.

#### a. *Willfulness allegations*

A willful violation of the FCRA concerns acts that are done knowingly or in reckless disregard for the FCRA's requirements.[76]  "[W]illfulness reaches actions taken in 'reckless disregard of statutory duty,' in addition to actions 'known to violate the Act.'"[77]  "A party does not act in reckless disregard of the FCRA 'unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the

---

[73] *See, e.g.*, ECF No. 19 at ¶¶ 98–107.

[74] *Id.* at ¶¶ 106, 109.

[75] ECF No. 26 at 21–23.

[76] *Safeco Ins. Co. of Am. v. Geico Gen. Ins. Co.*, 551 U.S. 47, 56–60 (2007).

[77] *Syed v. M-I, LLC*, 853 F.3d 492, 503 (9th Cir. 2017) (quoting *Safeco*, 551 U.S. at 56–57).

law substantially greater than the risk associated with a reading that was merely careless.'"[78]

"Conditions of a person's mind may be alleged generally" at the pleading stage.[79] For a willful violation, a plaintiff may recover punitive damages, reasonable costs and fees, and either actual or statutory damages.[80] For a negligent violation, however, a plaintiff may recover only actual damages and reasonable costs and fees.[81]

Mintun alleges that Experian's conduct was willful because it "knows the types of credit information [that] it offers to third parties; knows the sources of its information; knows how it stores . . . data or, alternatively, the persons who have accessed th[e] data; and has complete control over the format and presentation of its consumer disclosures."[82] These vague offerings are not sufficient to state a claim of willful or reckless violation. Mintun does allege, however, at least for her included-in-bankruptcy-date claim, that Experian disregarded industry standards and guidance and its own practices.[83] Mintun has sufficiently alleged that Experian willfully violated § 1681e(b) by failing to ensure accuracy of the information it furnished about her Bank of the West account on the 2017 Document. Mintun also pleads for her sources-of-address claim that the Ninth Circuit in *Shaw v. Experian* adopted Experian's argument that it did not have to provide the "bits and bytes" of its internal codes to clearly and accurately convey information to a consumer.[84] With this information, Mintun has sufficiently alleged that Experian willfully

---

[78] *Id.* (quoting *Safeco*, 551 U.S. at 69).

[79] Fed. R. Civ. P. 9(b).

[80] 15 U.S.C. § 1681n.

[81] *Id.* at § 1681o.

[82] ECF No. 19 at ¶ 98.

[83] *Id.* at ¶¶ 13–24.

[84] *Id.* at ¶ 97.

violated § 1681g(a)(2) when it failed to disclose the sources of her name-and-address information in plain English.

### b.    *Actual-damages allegations*

The Ninth Circuit has recognized that actual damages can include "recovery for emotional distress and humiliation."[85]  Experian argues that Mintun has not plausibly shown that she is entitled to damages for her emotional suffering because her allegations on that issue are conclusory and vague.[86]  I agree.  In fact, except for creditworthiness, she doesn't allege that she suffered any actual damages as a result of Experian's FCRA violations.[87]  Mintun's actual-damages allegations are dismissed with prejudice and with leave to amend if she can plead true facts to show that she suffered emotional distress or lost wages as a result of Experian's alleged FCRA violations.[88]

### Conclusion

Accordingly, IT IS HEREBY ORDERED that Experian's motion to dismiss Mintun's amended claims [**ECF No. 26] is GRANTED in part**:

---

[85] *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995).

[86] ECF No. 26 at 22.

[87] *Compare* ECF No. 19 at ¶ 106 (alleging damage to creditworthiness caused by FCRA violations), *with* ECF No. 19 at ¶ 109 (alleging lost time, transportation costs, and emotional distress associated with Nevada-law violations).

[88] In determining the issues raised in Experian's dismissal motion, I considered the Ninth Circuit's recent decision in *Ramirez v. TransUnion, LLC*—the "new, controlling authority" that Mintun moves to supplement the record with.  ECF No. 63 at 2 (citing *Ramirez v. TransUnion, LLC*, — F.3d —, 2020 WL 946973 (9th Cir. Feb. 27, 2020)).  There is some overlap between Mintun's claims and the claims alleged in *Ramirez*, but the facts in *Ramirez* are so materially distinguishable from the facts alleged here that the Ninth Circuit's ultimate holdings in that case are not of much use to Mintun.

- Mintun's claims under 15 U.S.C. § 1681g(a)(1), alleging that Experian failed to disclose behavioral and soft-inquiry data, are dismissed without prejudice and with leave to amend;

- Mintun's claims under 15 U.S.C. § 1681g(a)(1), alleging that Experian failed to disclose impermissible-use, included-in-bankruptcy, account-history data, and that addresses do not affect credit scores, are dismissed with prejudice and without leave to amend;

- Mintun many proceed on her claim under 15 U.S.C. § 1681g(a)(2) alleging that Experian failed to disclose the sources of her address information;

- Mintun's claims under §1681g(a)(3) and NRS § 598C.130, alleging that Experian failed to disclose who procured her consumer report, are dismissed without prejudice and with leave to amend;

- Mintun may proceed on her claim under § 1681e(b) alleging that Experian failed to use reasonable procedures to ensure the accuracy of information when it reported on the November Document that her WR/Home PR account was included in bankruptcy after her petition date;

- Mintun's claim under § 1681e(b), alleging that Experian removed all bankruptcy notations from her accounts on the November Document, is dismissed with prejudice and without leave to amend;

- Mintun's claim under § 1681i, alleging that Experian failed to conduct a reasonable reinvestigation after she disputed its conduct of removing all bankruptcy notations from her accounts is dismissed with prejudice and without leave to amend;

- Mintun's claims under NRS Chapters 598 and 41 are dismissed with prejudice and without leave to amend; and

- Mintun's willfulness and actual-damages allegations are dismissed without prejudice in part and with leave to amend.

Experian's dismissal motion is **DENIED** in all other respects.

IT IS FURTHER ORDERED that Mintun has until **April 20, 2020**, to file her second-amended complaint curing the deficiencies outlined in this order. If Mintun fails to timely amend her pleading, this case will proceed only on her claim that Experian violated § 1681g(a)(2) when it failed to disclose the sources of her name-and-address information in plain English.[89]

IT IS FURTHER ORDERED that Mintun's motion for leave to submit new authority without further briefing **[ECF No. 58] is GRANTED.**

_____
U.S. District Judge Jennifer A. Dorsey
March 30, 2020

---

[89] Mintun cannot proceed on her claim that Experian violated § 1681e(b) when it reported her included-in-bankruptcy date as occurring after her petition date without amendment because she has not plausibly alleged that Experian's conduct was willful or that she suffered actual damages as a result.