# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

Dawn Mintun,

     Plaintiff

v.

Equifax Information Services, LLC; Experian
Information Solutions, Inc.; and PHH
Mortgage ICE Center,

     Defendants

Case No.: 2:19-cv-00033-JAD-NJK

**Order Granting in Part Motion for
Reconsideration and Granting Motions for
Leave to File Supplemental Authorities**

[ECF Nos. 65, 86, 90]

Plaintiff Dawn Mintun contends that consumer reporting agency (CRA) Experian
Information Solutions, Inc. violated the Fair Credit Reporting Act (FCRA), 15 U.S.C. §§ 1681–
1681x, when it failed to reasonably reinvestigate Mintun's dispute about her account with
WF/Home PR or clearly disclose the sources of its information.  Experian moved to dismiss
Mintun's claims against it.  In resolving that motion, I allowed Mintun to proceed on her claims
that Experian willfully violated (1) § 1681e(b)'s mandate that CRAs use reasonable procedures
to ensure maximum possible accuracy of the consumer-credit information that they obtain and
(2) § 1681g(a)(2)'s requirement that a CRA must "clearly and accurately disclose" the sources of
its information when requested by a consumer.[1]

Experian moves for reconsideration, arguing that I committed clear error by allowing
Mintun to proceed on both claims.[2]  The reconsideration motion is fully briefed,[3] and each side
moves for leave to file supplemental authorities in support of its reconsideration arguments.[4]  I

---

[1] ECF No. 60 at 20.

[2] ECF No. 65.

[3] ECF Nos. 67 (response), 68 (reply).

[4] ECF Nos. 86 (Experian's motion), 90 (Mintun's motion).

grant Experian's motion for reconsideration in part, modifying only my decision that allowed Mintun to proceed on her claim that Experian willfully violated § 1681g(a) when it failed to clearly disclose the sources of her name and address information.  That claim is now dismissed without prejudice and with leave to amend to cure the deficiency identified in this order.

## Discussion

**A.    Legal standard for reconsidering an interlocutory order**

A district court "possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient[,]" so long as it has jurisdiction.[5]  A motion for reconsideration must set forth "some valid reason why the court should reconsider its prior decision" by presenting "facts or law of a strongly convincing nature."[6]  Reconsideration is appropriate if the court "(1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law."[7]  "A motion for reconsideration is not an avenue to re-litigate the same issues and arguments upon which the court already has ruled."[8]  And a motion for reconsideration may not be based on arguments or evidence that could have been raised previously.[9]

---

[5] *City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001) (quotation and emphasis omitted); *see also Smith v. Clark Cnty. Sch. Dist.*, 727 F.3d 950, 955 (9th Cir. 2013); LR 59-1.

[6] *Frasure v. United States*, 256 F. Supp. 2d 1180, 1183 (D. Nev. 2003).

[7] *Sch. Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).

[8] *Brown v. Kinross Gold, U.S.A.*, 378 F. Supp. 2d 1280, 1288 (D. Nev. 2005).

[9] *See Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000).

**B.      Applying the reconsideration standard to Experian's arguments**

Experian contends that I committed clear error when I determined that Mintun can proceed on her claim that Experian violated 15 U.S.C. § 1681e(b) by listing the wrong bankruptcy-inclusion date on a document it sent her on November 30, 2018, reasoning that "[i]t can be reasonably inferred from Mintun's allegations and the face of the November Document that it is a consumer report that Experian sent Mintun under § 1681(a)(6)(B)(ii)."[10]  Experian also argues that I erred in concluding that Mintun had sufficiently alleged that Experian's conduct in failing to ensure that the accuracy of the bankruptcy-inclusion date that it reported about her was willful because its reporting violated the credit industry's standards.[11]  Experian similarly argues that I erred when I concluded that Mintun had sufficiently alleged willfulness on Experian's part for her claim under § 1681g(a)(2).  I address Experian's arguments in order.

**1.      Consumer report for Mintun's § 1681e(b) claim**

Section 1681e(b) provides that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."  Mintun bases her § 1681e(b) claim on a report that she alleges Experian sent her in November 2018 after it reinvestigated her dispute under § 1681i(a)(1)(A) (the November Document).[12]  Section 1681i(a)(6)(B)(ii) requires a CRA, after it conducts a reinvestigation, to provide the consumer

---

[10] ECF No. 65 at 9 (citing ECF No. 60 at 14).

[11] *Id.* at 11–13.

[12] The November Document opens by explaining that Experian's "reinvestigation of the dispute(s) and/or other request(s) you recently submitted is now complete."  ECF No. 26-2 at 2.

with written notice of the results of its reinvestigation and a written "consumer report that is based upon the consumer's file as that file is revised as a result of the reinvestigation."[13]

Experian argues that despite the clear language in § 1681i(a)(6)(B)(ii) requiring a CRA to provide the consumer with a written limited "consumer report" after completing its reinvestigation, what it sent Mintun was actually a consumer disclosure, not a consumer report, so it cannot support her § 1681e(b) claim.[14]  But the FCRA does not contemplate a specific document called a "consumer disclosure."  Section 1681g, among others, requires CRAs to disclose certain information to consumers when they request it.[15]  But Experian does not argue that it issued the November Document to Mintun under § 1681g or any other provision that discusses "disclosures" that CRAs must make to consumers.[16]  Because Experian has not established that the November Document is a consumer disclosure under the FCRA, I proceed to determine if it is a consumer report.

### a.    Interpreting the FCRA's definition of "consumer report"

I begin with the statute's text.[17]  The FCRA broadly defines "consumer report" to mean:

> any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit

---

[13] 15 U.S.C. § 1681i(a)(6)(B)(ii).

[14] ECF No. 65 at 4–5.

[15] *See* 15 U.S.C. § 1681g.

[16] Mintun alleges that the November Document constitutes a consumer disclosure under § 1681g(a), ECF No 19 at 49, but I determined that "Mintun has not plausibly alleged that the November Document constitutes a 'disclosure' that Experian made in response to her request for information under § 1681g(a)."  ECF No. 60 at 12.  Neither Mintun nor Experian asks me to reconsider that determination.

[17] "The preeminent canon of statutory interpretation requires [courts] to 'presume that [the] legislature says in a statute what it means and means in a statute what it says there.'"  *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 184 (2004) (quoting *Conn. Nat. Bank v. Germain*, 503 U.S. 249, 253–54 (1992)).  It is for this reason that a court's "inquiry begins with the statutory text, and ends there as well if the text is unambiguous."  *Id.* (collecting cases).

worthiness, credit standing, credit capacity, character, general reputation, personal characteristic, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for . . . credit or insurance . . . or employment . . . or any other purpose authorized under section 1681b of this title.[18]

This definition is not model of clarity.  Does it mean that the *communication* itself must be *used or expected to be used or collected . . . for the purpose of serving as a factor in establishing the consumer's eligibility for . . . credit* or is it the *information* conveyed that must have that quality?  Experian favors the former interpretation, focusing on the intended recipient and arguing that the communication must be prepared for a third party like a creditor, employer, or insurer—but not a consumer—to qualify as a consumer report.  Experian's interpretation depends on the limiting phrase that appears at the end of the definition—*is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for . . . credit*—modifying the noun *communication*.

"Where the language [of a statute is] ambiguous, canons of construction can provide guidance by providing a compendium of well-established inferences about the statutory meaning."[19]  As Justice Sotomayor recently wrote for the U.S. Supreme Court in *Facebook, Inc. v. Noah Duguid*, "[u]nder the conventional rules of grammar, 'when there is a straightforward, parallel construction that involves all nouns or verbs in a series,' a modifier at the end of the list 'normally applies to the entire series.'"[20]  Like the definition of autodialer at issue in *Facebook*,

---

[18] 15 U.S.C. § 1681a(d).

[19] *Hall v. U.S. Dept. of Agric.*, 984 F.3d 825, 837 (9th Cir. 2020) (internal quotation and alterations omitted).

[20] *Facebook, Inc. v. Duguid*, 592 U.S. ___, ___, 2021 WL 1215717, at *4 (Apr. 1, 2021) (quoting A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 147 (2012) (Reading Law) (brackets omitted)).

the FCRA's definition of consumer report contains a series of nouns—*communication* and *information by a consumer reporting agency*—but unlike the definition in *Facebook*, the nouns are not in parallel; the latter is a prepositional phrase that modifies the former.[21]  So the series-qualifier canon that the Court applied in *Facebook* is not the best fit here.

Despite the lack of nouns in parallel, I stick with the series-qualifier canon for a bit longer to discuss when a sentence's syntax suggests that the modifier doesn't reach back through the entire list.  Justice Scalia and Bryan Garner explain in their book *Reading Law: The Interpretation of Legal Texts* that "[w]ith postpositive modifiers"[22] like those in consumer report's definition, "the insertion of a determiner before the second item tends to cut off the modifying phrase so that its backward reach is limited . . . ."[23]  Scalia and Garner caution that the "effect is not entirely clear" with this kind of syntax.  To demonstrate this issue, they provide, among others, the example "*[a]ny institution or a society that is charitable in nature*."[24]  They explain the best way to read this phrase is that "any institution probably qualifies, not just a charitable one."[25]  This is the preferable reading because *a* is a determiner and it stops the modifier *that is charitable in nature* from reaching the first noun *institution*.  Applying this lesson of the series-qualifier canon to consumer report's definition, the *any* before *information* is a determiner, and it stops the modifying phrase *which is used or expected to be used or collected in whole or in part . . .* from reaching back to modify the noun *communication*.  So it is the

---

[21] Also unlike in *Facebook*, the modifier at issue here does not "immediately follow[ ] a concise, integrated clause . . . ."  *Id.* at *1.

[22] Postpositive modifiers are "'positioned after' what they modify" and prepositive ones are positioned before.  Reading Law at 148.

[23] *Id.* at 149.

[24] *Id.*

[25] *Id.*

information in the communication, not the communication itself, that must be of the kind that *is used or expected to be used or collected in whole or in part* for the purposes of serving as a favor in credit, employment, or insurance decisions or other reasons allowed under the FCRA.

But because the nouns in this definition are not parallel, I look to *Reading Law* for further guidance. Scalia and Garner instruct that "[w]hen the syntax involves something other than a parallel series of nouns or verbs, a prepositive or postpositive modifier normally applies only to the nearest reasonable referent."[26] This interpretative rule is known as the nearest-reasonable-referent canon. Applying this canon here, *information* is the nearest reasonable referent of the modifier *is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for . . . credit*.[27] So under either canon, the most natural reading of the statute is that a consumer report is any communication by a CRA of any information that (1) bears on a consumer in one or more of the several enumerated ways and (2) is used or expected to be used or collected in whole or in part for the purpose of establishing a consumer's eligibility for things like credit, insurance, or employment or for other purposes permitted under the FCRA.

Experian argues that interpreting § 1681i(a)(6)(B)(ii) to mean what it plainly says—that CRAs must provide the consumer with a limited "consumer report" after completing a reinvestigation—"would . . . expand § 1681a(d)(1)'s definition of 'consumer reports' to include communications beyond those 'used or expected to be used or collected in whole or in part for

---

[26] *Id.* at 152.

[27] This also applies to the postpositive modifier *bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living*.

the purpose of serving as a factor in establishing the consumer's eligibility for' credit."[28]  But a straightforward reading of consumer report's definition doesn't support Experian's conclusion that it is the communication itself that must be "used or expected to be used or collected" for the purpose of establishing the consumer's eligibility for credit.  I find that it is more reasonable to interpret § 1681a(d)(1) as stating that quality must be held by the information conveyed, not the communication it's contained in.

It also makes more sense to say that information is "collected in whole or in part" than it does to say that a communication is.  It is the information about a consumer, not the communication itself, that creditors, employers, and insurers use as factors in establishing the consumer's eligibility for their services.  This interpretation better tracks the Ninth Circuit's instructions in *Guimond v. Trans Union Credit Information Co.* that "to make out a prima facie violation under § 1681e(b), a consumer must present evidence tending to show that a [CRA] prepared a report containing inaccurate information[,]" and "[n]o court has held that the prima facie case required that an inaccurate report was ever disseminated."[29]  And it is more consistent with the Ninth Circuit's repeated instruction that "[a] 'consumer report' under § 1681e includes a file procured with a 'reasonable expectation that it will be put to a use permissible under'" the FCRA.[30]  Finally, this interpretation is more cogent than Experian's because it is consistent with the two interpretative canons discussed above.

---

[28] ECF No. 65 at 9 (quoting 15 U.S.C. § 1681a(d)(1)).

[29] *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 & n.3 (9th Cir. 1995).

[30] *Steinmetz v. Am. Honda Fin. Corp.*, 835 F. App'x 199, 201–02 (9th Cir. 2020) (unpublished) (quoting *Comeaux v. Brown & Williamson Tobacco Co.*, 915 F.2d 1264, 1274 (9th Cir. 1990)) (brackets omitted); *accord Hansen v. Morgan*, 582 F.2d 1214, 1218 (9th Cir. 1978).

It appears that what Experian really wants is for § 1681i(a)(6)(B)(ii) consumer reports to be either excepted from the definition of consumer reports or included with the reports that Congress excepted from liability for negligent actions.  But that is a job for Congress, not me. Congress enumerated six categories of items that are excluded from the definition of consumer report.  Experian does not argue—and I do not find—that the document Experian issued to Mintun under § 1681i(a)(6)(B)(ii) falls within any of the listed exclusions.[31]  Congress also limited the liability of CRAs, among others, for negligent acts "with respect to the reporting of information . . . disclosed pursuant to section 1681g, 1681h, or 1681m" of the FCRA.[32]  But the reporting of information to consumers under § 1681i(a)(6)(B)(ii) is not included in § 1681h(e)'s list of reports for which CRAs have qualified immunity.

### b.  Experian's authorities are distinguishable.

Experian does not offer any binding authority that counsels otherwise.  It largely relies on the Ninth Circuit panel's footnoted statement in *Shaw v. Experian Information Solutions, Inc.* that "[a] consumer . . . report is a CRA-prepared report that a CRA issues to third parties for certain qualifying purposes."[33]  But the *Shaw* panel followed this statement by informing the reader that "[t]he parties do not dispute that the reports generated by Experian for use by Fannie Mae and other lenders are consumer reports."[34]  A full reading of the case shows that the

---

[31] The closest exclusion is § 1681a(d)(2)(A)(i)'s "report containing information solely as to transactions or experiences between the consumer making the report . . . ."  But other than the first page and a half, the November Document does not contain information solely as to transactions and experiences between Mintun and Experian.  Pages 3 through 9 of the November Document relate to transactions between Mintun and her various creditors, between Experian and any creditor that furnished it information about Mintun, and between Experian and any vendor that supplied it publicly available information about Mintun.

[32] 15 U.S.C. § 1681h(e).

[33] *Shaw v. Experian Info. Sols., Inc.*, 891 F.3d 749, 755, n.3 (9th Cir. 2018).

[34] *Id.*

consumers in *Shaw* did not base their claims on the "responses" that they received from Experian about their disputes but, rather, on reports that Experian generated for Fannie Mae to use when it considered the consumers' mortgage applications using its Desktop Underwriter software.[35]  So *Shaw* does not speak to the question of whether a consumer report that a CRA issues to a consumer under § 1681i(a)(6)(B)(ii) qualifies as a consumer report under § 1681a(d)(1)'s definition of that term and can form the basis of a claim under § 1681e(b).[36]

Mintun points out that nothing in *Shaw* precludes a consumer from being the third party to whom a CRA prepares a consumer report.  I would extend Mintun's point to the fact that Experian has identified nothing in the FCRA that precludes her interpretation either.  Experian does not dispute that it issued the November Document to Mintun after it reinvestigated her dispute under § 1681i(a)(1)(A).  Section 1681i(a)(6)(B)(ii) requires a CRA, after it conducts a reinvestigation, to provide the consumer with written notice of the results of its reinvestigation and a written "consumer report that is based upon the consumer's file as that file is revised as a result of the reinvestigation."[37]  Thus, the FCRA's plain language supports Mintun's interpretation that the November Document is a consumer report.

The Ninth Circuit has explained that "[i]f a [CRA] provides a report based on a reasonable expectation that [it] will be put to a use permissible under the FCRA, then that report is a 'consumer report' under the FCRA and the ultimate use to which [it] is actually put is irrelevant to the question of whether the FCRA governs the report's use and the user's

---

[35] *Id.* at 753–55.

[36] 15 U.S.C. § 1681e(b) provides that "[w]henever a [CRA] prepares a consumer report[,]" it must "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

[37] 15 U.S.C. § 1681i(a)(6)(B)(ii).

conduct."[38]  By providing Mintun with a limited consumer report based on the results of its

reinvestigation of her dispute, Experian had a reasonable expectation that report would be put to

a permissible use under the FCRA, like Mintun obtaining credit or exercising her right to have

Experian include a statement disputing the accuracy or completeness of the information if the

reinvestigation did not resolve the dispute.[39]  Indeed, Mintun asked Experian in her initial and

follow-up dispute letters that if it didn't correct the disputed information, that it "please include a

statement on [her] credit report stating that [she] dispute[s] the above information."[40]  And

Experian does not argue that Mintun requested the report—by disputing that items in her credit

file were inaccurate—for a non-permissible purpose.

Experian also cites the Ninth Circuit's unpublished decision in *Foskaris v. Experian
Information Solutions, Inc.*, which concerns a consumer's claims under §§ 1681g(a)(1)
and 1681e(a).[41]  Mintun's claim arises under § 1681e(b) and is based on a reinvestigation report
that Experian issued to her under § 1681i(a)(6)(B)(ii).  In any event, the *Foskaris* consumer
argued on appeal that Experian violated § 1681e(a) when it "disclosed his credit information to
Kohl's for an impermissible purpose."[42]  The panel determined that the consumer had waived
that claim because his arguments below "centered on an entirely different factual predicate"—
"[h]e argued that dismissal was not warranted because he sufficiently pleaded that Experian
violated § 1681e(a) by failing to provide certain information in the consumer disclosures *to*

---

[38] *Comeaux*, 915 F.2d at 1274.

[39] 15 U.S.C. §§ 1681i(a)(6)(B)(iv), (b), (c); *accord id.* at § 1681(b)(a)(2) (listing permissible purposes for consumer reports including "[i]n accordance with the written instructions of the consumer to whom it relates").

[40] ECF No. 31-7 at 39, 2–3.

[41] *Foskaris v. Experian Info. Sols., Inc.*, 808 F. App'x 436, 439 (9th Cir. 2002) (unpublished).
[42] *Id.*

11

*him.*[43]   The panel concluded that the district court correctly "found that § 1681e(a) does not implicate consumer-disclosure requirements and dismissed the claim."[44]   Unlike here, the *Foskaris* consumer did not dispute the contents of his credit file to the CRA under § 1681i, and so the CRA did not perform a reinvestigation or issue him a consumer report under § 1681i(a)(6)(B)(ii).   So *Foskaris* does not support Experian's argument.

Experian also relies on the Eleventh Circuit's statement in *Collins v. Experian Information Solutions, Inc.* that "[a] 'consumer report' requires communication to a third party . . . ."[45]   Collins was sued by a creditor in state court contending that he owed it money on an account that it had been assigned by another creditor.[46]   Collins answered, denying that he owed the creditor any money, and he ultimately obtained judgment in his favor.[47]   The debt was listed on an Experian-prepared consumer report, so Collins disputed it by clearly stating that judgment was entered in his favor and provided the case number and other information.[48]   After some run-around, Experian sent an Automated Consumer Dispute Verification form to the creditor, which wrongly responded that the debt was still valid.[49]   Experian then sent "an investigation results summary" to Collins, stating that his dispute "had been 'reviewed'" and he "could visit Experian's website to 'check the status of his pending disputes at any time.'"[50]   The summary explained that the disputed item "'was either updated or deleted; review this report to learn its

---

[43] *Id.*

[44] *Id.*

[45] *Collins v. Experian Info. Sols., Inc.*, 775 F.3d 1330, 1335 (9th Cir. 2015).

[46] *Id.* at 1331.

[47] *Id.* at 1331–32.

[48] *Id.* at 1332.

[49] *Id.*

[50] *Id.* (brackets omitted).

outcome.'"[51]  "The summary also provided a mailing address for Collins to request a hard copy of his corrected credit report by mail."[52]

When Collins visited Experian's website more than a month later, he discovered that Experian was still reporting the disputed account.[53]  So Collins sued Experian, claiming that it failed to conduct a reasonable reinvestigation in violation of § 1681i(a)(1).[54]  The district court granted summary judgment in favor of Experian, explaining "Collins could not show actual damages [because] he failed to present evidence that the erroneous information regarding his [disputed] account was ever published to a third party."[55]  The Eleventh Circuit reversed, concluding as a matter of first impression that publication was not required because § 1681i(a) concerns completeness of information in the consumer's "file," which is not the same thing as a "consumer report."[56]

At first blush, *Collins* appears to support (by analogy) Experian's argument that a consumer report requires publication to third party like a creditor, employer, or insurer.  But it is not clear from the Eleventh Circuit's decision if Experian actually sent Collins a consumer report under § 1681i(a)(6)(B)(ii).  I have reviewed the document that Experian sent to Collins, and I find that it is more like the first page and a half of the document that Experian sent Mintun—the dispute-results part—that I do not find constitutes a consumer report.  And it does not include the

---

[51] *Id.*

[52] *Id.*

[53] *Id.*

[54] *Id.* at 1332–33.

[55] *Id.* at 1333.

[56] *Id.* at 1335.

pages containing the kind of information that I find constitutes a consumer report in this case.[57]

Also unlike here, Collins did not argue on appeal that any of the documents Experian sent him or

what he accessed from Experian's website constituted a consumer report.  So *Collins* ultimately

does not support Experian's argument that the document it sent Mintun is not a consumer report.

Experian also cites a host of decisions from district courts across the country that have

stated that a consumer report is a document that a CRA issues to third parties.[58]  Although

persuasive, these decisions do not move the needle on the issue before me because the courts in

those cases did not analyze whether a report issued by a CRA to a consumer under

§ 1681i(a)(6)(B)(ii) qualified as a consumer report under § 1681e(b).  And they did not reach this

issue for many reasons, including that the case did not involve a claim under § 1681e(b) based on

a report issued under § 1681i(a)(6)(B)(ii); the plaintiff did not proffer the argument that the

report issued under § 1681i(a)(6)(B)(ii) qualified as a consumer report even if it was issued only

to the consumer; or the plaintiff conceded the CRA's argument, which Experian makes here, that

the consumer report must be issued to a third party like a creditor, employer, or insurer to be

actionable under § 1681e(b).

The upshot of my lengthy analysis is that I am not convinced that my decision allowing

Mintun to proceed on her § 1681e(b) claim based on the consumer report that Experian issued

her under § 1681i(a)(6)(B)(ii) was clearly erroneous.  Thus, I grant Experian's motion to

reconsider my decision allowing Mintun to proceed on her § 1681e(b) claim, but I do not rescind

or modify that decision.  I next consider whether I erred in allowing Mintun to proceed on her

claims that Experian's alleged conduct was willful.

---

[57] *Compare* ECF No. 26-2, *with Collins v. Experian Info. Sols., Inc.*, Case No. 2:11-cv-0938, at
ECF No. 49-9 (Exhibit H, "Investigation Results") (N.D. Ala. July 20, 2012).

[58] ECF Nos. 65 at 6–8; 68 at 4–5, n.2.

### 2.   Willfulness

"A consumer may succeed on a claim under the FCRA only if [s]he . . . shows that the defendant's violation was negligent or willful."[59]  "A willful violation of the FCRA occurs where a defendant knowingly or recklessly violated the FCRA."[60]  This is an objective standard.[61]  "To prove a willful violation, a plaintiff must show not only that the defendant's interpretation was objectively unreasonable, but also that the defendant ran a risk of violating the statute that was substantially greater than the risk associated with a reading that was merely careless."[62]

### a.   Mintun's § 1681e(b) claim

Experian argues that I erred when I concluded that Mintun had adequately alleged willfulness on Experian's part because she detailed how Experian's conduct failed to comply with the credit industry's guidelines—the "Metro 2" standards—for furnishing information about accounts that are included in bankruptcy.[63]  It contends that Mintun alleges that other defendants failed to comply with industry guidelines, not Experian.  But Mintun alleges that "all defendants adopted the Metro 2 reporting standard and at all times relevant implemented the Metro 2 format as an integral aspect of their respective duties under the FCRA to have in place adequate and reasonable policies and procedures to handle investigations of disputed information."[64]  She pleads that all "[d]efendants reported and rereported inaccurate and incomplete information"[65]

---

[59] *Marino v. Ocwen Loan Servicing LLC*, 978 F.3d 669, 673 (9th Cir. 2020) (citing 15 U.S.C. §§ 1681n (willful), 1681o (negligent)).

[60] *Shaw*, 891 F.3d at 761 (citing *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57 (2007)).

[61] *Id.*

[62] *Marino*, 978 F.3d at 673 (citing *Safeco*, 551 U.S. at 69).

[63] ECF No. 65 at 11–13.

[64] ECF No. 19 at ¶ 17.

[65] *Id.* at ¶ 23.

1   and that their reporting "departed from the credit industry's own reporting standards and was not

2   only inaccurate, but also materially misleading under the [Consumer Data Industry

3   Association]'s standards as well."[66]

4       As for Experian specifically, Mintun alleges that that agency "inaccurately reported a

5   tradeline from WF/Home PR . . . as included in Chapter 13 bankruptcy on December 25, 2012,

6   after the date of [Mintun's] bankruptcy petition."[67]   Mintun contends that in her letter to

7   Experian, she "explicitly disputed several accounts [that] had been included in her bankruptcy,

8   but which she contended were not being reported that way."[68]   She alleges that Experian has an

9   internal policy to unilaterally update accounts when the consumer disputes that it should be

10  reported as included in bankruptcy.[69]   Mintun also alleges that Experian correctly reported—and

11  thus had in its own records—the correct dates for her bankruptcy inclusion and discharge.[70]

12  But, she continues, after Experian conducted its reinvestigation, it failed to "reconcile the

13  disparate bankruptcy date that it had reported on the WF Account" with what it reported under

14  the "public records" section of her report.[71]

15      The Ninth Circuit held in *Dennis v. BEH-1, LLC* that "a credit reporting agency must

16  exercise reasonable diligence in examining the court file to determine whether an adverse

17  judgment has, in fact, been entered against the consumer."[72]   The court explained that "[a]

18

19  ────────────

    [66] *Id.* at ¶ 24.

20  [67] *Id.* at ¶ 54.

21  [68] *Id.* at ¶ 57.

    [69] *Id.* at ¶ 55.

22  [70] *Id.* at ¶¶ 53–54.

23  [71] *Id.* at ¶ 58.

    [72] *Dennis v. BEH-1, LLC*, 520 F.3d 1066, 1071 (9th Cir. 2008).

reinvestigation that overlooks documents in the court file expressly stating that no adverse judgment was entered falls far short of this standard."[73]  *Dennis* also instructs that it is "important . . . for Experian, a company that traffics in the reputations of ordinary people, to train its employees to understand the legal significance of the documents they rely on."

If, as Mintun alleges, her dispute letter put Experian on notice that her WF/Home PR account should be reported as included in bankruptcy, a reasonable jury could find that Experian's alleged conduct of failing to report the correct date of inclusion was objectively unreasonable.  This is a plausible conclusion considering Mintun's allegation that Experian had the correct date in its records but failed to consult them in reinvestigating her dispute.  This conclusion is also possible considering § 1681c's mandate that bankruptcy filings cannot be reported beyond 10 years.  I therefore grant Experian's motion to reconsider my decision that allowed Mintun to proceed on her claim that Experian willfully violated § 1681e(b), but I do not rescind or modify my decision that she has plausibly alleged that claim.

### b.   *Mintun's § 1681g(a)(2) claim*

The FCRA provides that every CRA must, "upon request, . . . clearly and accurately disclose to the consumer . . . [a]ll information in the consumer's file at the time of the request" and "the sources of the information . . . ."[74]  Mintun alleges that in a consumer disclosure dated June 30, 2018, (June Document) Experian provided the sources of its name-and-address information for her using only "cryptic, numeric codes" that "deprived [her] of any ability to determine its accuracy."[75]  In resolving Experian's motion to dismiss this claim, I determined

---

[73] *Id.* (emphasis omitted).

[74] 15 U.S.C. § 1681g(a) (1)–(2).

[75] ECF No. 19 at 25.

that Mintun had sufficiently alleged that Experian willfully failed to clearly disclose the sources of its name-and-address information in violation of § 1681g(a)(2).[76]  Experian argues that my decision was erroneous for two reasons: (1) it is based on a misreading of the Ninth Circuit's decision in *Shaw v. Experian Information Solutions, Inc.* and (2) and overlooks decisions from multiple courts that the FCRA does not require CRAs to disclose the sources of its name-and-address information unless source information is specifically requested by the consumer.[77]

I reject Experian's position that *Shaw* "has no bearing here."[78]  *Shaw* was decided one month before Experian sent Mintun the consumer disclosure that she had requested.[79]  The *Shaw* consumer did take the opposite position of what Mintun claims here—the *Shaw* consumer argued that Experian's disclosure was not clear in part because it failed to disclose the "lead payment history code" that Experian provided to lenders like Fannie Mae.[80]  Despite this difference, one point that Experian should have taken from *Shaw* and applied to all consumer disclosures going forward is that while it might be "accurate" to disclose coded information to consumers, if the average consumer won't know what the code means without a manual, then the disclosure is not "clear" and thus fails to comply with § 1681g.[81]  If, as Mintun alleges, Experian disclosed codes for the sources of its name-and-address information without any means to decipher their meaning, then a reasonable jury could find that Experian's interpretation of § 1681g(a) was objectively unreasonable, especially in light of *Shaw*.

---

[76] ECF No. 60 at 13.

[77] ECF No. 65 at 13–15.

[78] *Id.* at 13.

[79] ECF No. 26-3 at 2 (the June Document opens with Experian stating that, "[i]n response to your recent request, we are pleased to send you this credit report").

[80] *Shaw*, 891 F.3d at 753, 759–60.

[81] *Id.* at 759–60 (citing *Gillespie v. Equifax Info. Servs., LLC*, 484 F.3d 938, 941 (7th Cir. 2007)).

Experian next argues that other district courts have rejected claims like Mintun's when nothing in the record showed that the consumer specifically requested a disclosure of Experian's information sources.[82]  But I previously determined that it was reasonable to infer that Mintun asked Experian to disclose the sources of her information because Experian provided her that information—and nearly all of the other information that § 1681g(a) requires CRAs to disclose upon a consumer's request—in the June Document.[83]  The June Document states that it was sent "[i]n response to [Mintun's] recent request . . . ."[84]  Experian does not contend that its authorities reached the opposite conclusion on identical facts.  Nor does Experian expound on any of its citations beyond a simple parenthetical.  So Experian has not demonstrated that my prior determination was clearly erroneous or manifestly unjust for this reason.

Experian also argues that it didn't violate § 1681g(a) because Mintun "is able to compare the subscriber code(s) listed for each name or address to see the source of the information on the disclosure without any Experian manual."[85]  But Mintun plausibly alleges that Experian did not clearly disclose the sources of the information; she alleges that Experian "identified sources through cryptic, numeric codes" that "deprived" Mintun "of any ability to determine its

---

[82] ECF No. 65 at 14–15.

[83] ECF No. 26-3 at 3–14.  Section 1681g(a) requires CRAs to disclose, with exceptions not relevant here, six categories of information upon a consumer's request: (1) all information in the consumer's file; (2) the sources of that information; (3) identity of each person who procured a consumer report for certain purposes; (4) dates, original payees, and amounts of any checks that are the basis for adverse characterization of the consumer; (4) a record of all inquiries during the preceding year in connection with credit or insurance transactions that were not initiated by the consumer; and (6) if the consumer requested the credit file and not a credit score, a statement that the consumer can obtain a credit score.  The only category of information missing from the June Document is the fourth one.

[84] ECF No. 26-3 at 2.

[85] ECF No. 65 at 14.

accuracy."[86]  That is all that Mintun is required to plead to survive dismissal.[87]  Even if I generously construed Experian's argument to be that Mintun's claim is futile because her allegations are belied by the documents that she relies on, I would deny it.  Although some of the address-identification numbers can be matched by flipping through the pages of the June Document, I couldn't find a match for any of the name-identification numbers or five of the address-identification numbers even after converting the document into a searchable pdf.[88]

Nestled within this argument is a footnoted one that Mintun's claim fails because she cannot demonstrate that she was harmed by Experian's alleged conduct.  Experian posits that Mintun cannot make this showing because she does not allege that any of her name or address information was wrong.[89]  What Experian's argument implies is that Mintun has not plausibly alleged that she suffered a concrete harm sufficient to confer standing under Article III.

In *Spokeo*, the Ninth Circuit "adopted a two-part inquiry for determining whether the violation of a statutory right constitutes a concrete injury" sufficient to satisfy Article III standing.[90]  The first step is determining "whether the statutory provisions at issue were established to protect the plaintiff's concrete interests" rather than "purely procedural rights."[91]

---

[86] ECF No. 19 at ¶ 93.

[87] *See e.g.*, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007).

[88] Mintun alleges in her second amended complaint that she could not identify the same five address codes that I could not locate in the June Document.  ECF No. 66 at ¶ 42.

[89] ECF No. 65 at 14 n.6.

[90] *Ramirez v. TransUnion LLC*, 951 F.3d 1008, 1025 (9th Cir. 2020) (quoting *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1113 (9th Cir. 2017)).

[91] *Id.* (brackets omitted).

If so, then the second step is to analyze "whether the specific procedural violations alleged actually harm, or present a material risk of harm, to such interests.'"[92]

In *Ramirez v. TransUnion LLC*, the Ninth Circuit recently determined that a failure-to-disclose claim under § 1681g(a) satisfied this two-part test.[93] The *Ramirez* plaintiffs claimed that TransUnion violated § 1681g(a) when it failed to disclose that they had been identified as potential matches to the Treasury Department's Office of Foreign Assets Control (OFAC) regulation when the consumers requested their credit reports.[94] The Ninth Circuit explained that "although the FCRA's disclosure requirements might seem 'procedural' in nature, Congress enacted them because they are the only practical way to protect consumers' interest in fair and accurate reporting."[95] Because the FCRA's disclosure requirements "protect consumers' concrete interest in accessing important information about themselves and understanding how to dispute inaccurate information before it reaches potential creditors[,]" the Ninth Circuit found that the first step of the analysis was met for the *Ramirez* plaintiffs' § 1681g(a) claims.[96]

Although Mintun's § 1681g(a) claim concerns the identities of the persons and entities that have furnished information about her to Experian, not the information itself, it is still about protecting a consumer's concrete interest in accessing important information about herself. Knowing what persons and entities are furnishing information to CRAs is an important way for consumers to be aware of potential issues like fraud, privacy invasion, and identity theft. It is

---

[92] *Id.* (ellipses omitted).

[93] *Id.* at 1029–30.

[94] *Id.* at 1029.

[95] *Id.*

[96] *Id.* The Ninth Circuit also found that the first step was met for the plaintiff's claims under § 1681g(c)(2); Mintun does not allege such a claim here.

also the only way that a consumer can know—and therefore dispute—instances where persons or entities have no business furnishing any information about them to a CRA, like if the consumer never had a business relationship with the furnisher. So the first step of the *Spokeo* analysis is met for Mintun's § 1681g(a) claim.

But Mintun's claim, as pled, falters at the second step. The Ninth Circuit explained in *Ramirez* that it had "no trouble concluding that TransUnion's disclosure violations exposed all class members to a material risk of harm to their concrete informational interests."[97] The problem, it explained, is that "Transunion sent the class members a document that purported to be their entire credit report, containing no mention of OFAC."[98] This omission "put every class member at a risk of real harm: not knowing that they were falsely being labeled as terrorists, drug dealers, and threats to national security."[99] The Ninth Circuit concluded that TransUnion's omission "exposed every class member to a material risk of harm to the core interests the FCRA was designed to protect—their interests in being able to monitor their credit reports and promptly correct inaccuracies."[100]

Mintun alleges that when she "directly challenged the address information," Experian failed to respond "in plain English which specific sources of information it has used to obtain the address information [that she] had disputed except through [its] unrecognizable numeric codes, thus frustrating [her] ability to actually contact these sources to dispute the information."[101] I cannot tell if Mintun "challenged" the address information because it was wrong, she could not

---

[97] *Id.*

[98] *Id.* at 1029–30.

[99] *Id.* at 1030.

[100] *Id.*

[101] ECF No. 19 at ¶ 94.

comprehend the information's source, or both.  The second step of the *Spokeo* analysis turns on whether the specific procedural violations alleged actually harm, or present a material risk of harm, to the consumer's concrete interests.[102]  I cannot properly analyze this step because it is not clear if Mintun alleges only that the specific procedural violation was failing to clearly disclose the sources of information, which prevented Mintun from verifying the accuracy of the sources; or if she also alleges that some of her name and address information was wrong, so the unclear sources also prevented her from disputing the accuracy of that information.[103]

I therefore grant Experian's motion to reconsider my decision allowing Mintun to proceed on her claim that Experian willfully violated § 1681g(a), and I modify my prior decision because it is manifestly unjust in light of my recognition that Mintun has not clearly alleged what specific procedural violation or violations occurred.  Mintun's claim that Experian willfully violated § 1681g(a) when it failed to clearly disclose its sources for her name-and-address information is therefore dismissed without prejudice and with leave to amend to cure this deficiency.[104]

## Conclusion

IT IS THEREFORE ORDERED that Experian's motion for reconsideration **[ECF No. 65] is GRANTED in part**: I reconsider the three decisions that Experian challenges, but I modify only my decision about Mintun's claim that Experian willifully violated § 1681g(a) as to

---

[102] *Ramirez*, 951 F.3d at 1025.

[103] Mintun did not clarify this issue in her second amended complaint.  *See* ECF No. 66.

[104] Nothing in this order should be construed as prejudging whether Mintun's § 1681g(a) claim fails for lack of a concrete injury if she does not and cannot allege that any of her name or address information was wrong.

1   its disclosure of the sources for her name-and-address information.  That claim is dismissed

2   without prejudice and with leave to amend.  The motion is **DENIED in all other respects**.

3          IT IS FURTHER ORDERED that Experian's motion for leave to file supplemental

4   authority **[ECF No. 86]** and Mintun's motion for leave to file supplemental authority **[ECF No.**

5   **90] are GRANTED**.

6          IT IS FURTHER ORDERED that Mintun has until **May 7, 2021**, to file her third

7   amended complaint curing the defect identified in this order.

8   _____

    U.S. District Judge Jennifer A. Dorsey

9                                    April 23, 2021

10

11

12

13

14

15

16

17

18

19

20

21

22

23