Cheryl L. O'Connor
Nevada Bar No. 14745
coconnor@jonesday.com
JONES DAY
3161 Michelson Drive, Suite 800
Irvine, CA  92612.4408
Telephone:    (949) 851-3939
Facsimile:    (949) 553-7539

Jennifer L. Braster
Nevada Bar No. 9982
Andrew J. Sharples
Nevada Bar No. 12866
NAYLOR & BRASTER
1050 Indigo Drive, Suite 200
Las Vegas, NV  89145
Telephone:  (702) 420-7000
Facsimile:  (702) 420-7001
jbraster@nblawnv.com
asharples@nblawnv.com

*Attorneys for Defendant*
*Experian Information Solutions, Inc.*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| DAWN MINTUN, | Case No. 2:19-cv-00033-JAD-NJK |
| Plaintiff, | **EXPERIAN INFORMATION SOLUTIONS, INC.'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| EXPERIAN INFORMATION SOLUTIONS, INC., | Complaint filed:    January 4, 2019 |
| | FAC filed:          March 12, 2019 |
| Defendant. | SAC filed:          May, 4, 2020 |
| | Counterclaim filed: May 18,2020 |
| EXPERIAN INFORMATION SOLUTIONS, INC., | **ORAL ARGUMENT REQUESTED** |
| Counterclaimant, | |
| v. | |
| DAWN MINTUN, | |
| Counterclaimant/Defendant. | |

Defendant Experian Information Solutions, Inc. ("Experian"), by and through its counsel of record, hereby files this Motion for Summary Judgment ("Motion").  This Motion is based on the memorandum of points and authorities in support of the Motion, declarations and exhibits attached thereto, all of the pleadings and other papers on file in this action, and upon such further evidence or argument that the Court may consider.

**INTRODUCTION**

Plaintiff Dawn Mintun ("Plaintiff") asserts a waived and time-barred claim that, in any event, is patently frivolous.  She claims Experian violated the Fair Credit Reporting Act ("FCRA") by reporting that her Wells Fargo/Home PR account ("the WF Account") had been "included in bankruptcy" on December 25, 2012 instead of December 20, 2012.  (ECF No. 66 at ¶¶ 9, 33.)  But Plaintiff has identified no evidence that any credit decision was or would be adversely influenced by this minor discrepancy, much less that Experian acted unreasonably or willfully.  Even if the five-day variance were legally significant (it is not), and the claim were not both time-barred and released (it is), Plaintiff herself verified the December 25 date as accurate and waived any right to bring this claim in a settlement agreement that she executed just two years before filing this lawsuit. (*See* Declaration of Jennifer A. Braster ("Braster Decl.") ¶ 4, Ex. A ("Settlement Agreement") at ¶ 2.)

Before signing the Settlement Agreement, Plaintiff received " ███████████ ███████████████████ " it from her attorney, Miles Clark—the same attorney representing her in this case. (Braster Decl. Ex. A at ¶ 2.)  She accepted valuable consideration from Experian, and agreed to ████████████████████████████████ ████████████████████████████████ ███████████████████████████ ." (*Id.* at ¶ 1.)  By asserting this released claim in the Second Amended Complaint ("SAC"), Plaintiff materially breached the Settlement Agreement, forcing Experian to defend against this frivolous lawsuit and to countersue to enforce the Settlement Agreement.

Experian now moves for summary judgment on its affirmative defenses to Plaintiff's § 1681e(b) claim,[1] and on Experian's counterclaims for breach of contract and breach of the implied covenant of good faith and fair dealing. (ECF No. 69.) **First**, Plaintiff's § 1681e(b) claim is barred because Plaintiff released it in the Settlement Agreement. (*See* Braster Decl. Ex. A at ¶ 1.) **Second**, the claim is time-barred because Plaintiff was put on notice of the claim at least in September 2016, which is more than two years prior to filing this lawsuit in January 2019. (*See* Braster Decl. Ex. B at D_Mintun 000697.) But even if the claim were not barred, Plaintiff has failed to adduce a scintilla of evidence in support of it. Plaintiff cannot establish any, much less all, of the elements of a § 1681e(b) claim: (1) an inaccuracy in Experian's reporting; (2) that Experian failed to follow reasonable procedures; and (3) that Experian acted willfully.[2]

In contrast, the undisputed facts demonstrate that Experian is entitled to judgment as a matter of law on its counterclaims. The Settlement Agreement is a valid contract, which Plaintiff materially breached by filing the SAC. Experian was damaged both by having to defend against this frivolous lawsuit and having to countersue to enforce the Settlement Agreement. Accordingly, the Court should grant summary judgment to Experian on its counterclaims, and award Experian the ███████████████████████████████████████ that it is entitled to under the Settlement Agreement for bringing this enforcement action. (Braster Decl. Ex. A at ¶ 12.)

## STATEMENT OF UNDISPUTED MATERIAL FACTS

### I.   Plaintiff's First Lawsuit Against Experian

The saga of Plaintiff's campaign of lawsuits against Experian began on January 11, 2017, when Plaintiff first sued Experian for allegedly inaccurate reporting in violation of § 1681e(b) (the "First Lawsuit"). (*See* Braster Decl. Ex. C.) Notably, one of the documents at issue in the First

---

[1] On April 23, 2021, the Court dismissed Plaintiff's only other claim, under § 1681g(a), with leave to amend, but Plaintiff did not do so. (*See* ECF No. 105 & n.103 ("Mintun did not clarify this issue in her second amended complaint.").)

[2] On March 30, 2020, the Court dismissed Plaintiff's allegations of negligence/actual damages "with prejudice and with leave to amend if she can plead true facts to show that she suffered emotional distress or lost wages as a result of Experian's alleged FCRA violations." (ECF No. 60 at 19.) Plaintiff did not plead any such facts in the SAC. Moreover, she plead *no facts at all* to demonstrate actual damages to support a negligence theory in the SAC. (*See generally* ECF No. 66.)

Lawsuit—Plaintiff's September 23, 2016 reinvestigation results—reported the WF Account as included in bankruptcy on December 25, 2012:

(Braster Decl. Ex. B at D_Mintun 000697.)  Yet Plaintiff did not assert a claim for this alleged inaccuracy.

Plaintiff and Experian settled the First Lawsuit on June 28, 2017, when they executed a written Settlement Agreement and Release.  (*See* Braster Decl. Ex. A.)  In executing the Settlement Agreement, Plaintiff certified the following:

- She " ███████████████████████████████████ (*Id.* at ¶ 2);

- She "████████████████████████████" from her attorney, Miles Clark, "██ ████████████████ (*id.*);

- She agreed to ███████████████████████ ████████████████████████████████ ████████████████████████████████ ████████████ (*Id.* at ¶ 1);

- She entered into the Settlement Agreement "███████████████ ████████████████████████████████ ████████████████ (*id.* at ¶ 2);

- She "████████████████████████████ ████████████████████" (*id.* at ¶ 5); and

- She agreed that in any action to enforce the Settlement Agreement, ███ ████████████████████████████████ ████████████████" (*Id.* at ¶ 12).

- 3 -

Like the September 23, 2016 reinvestigation results, the June 13, 2017 credit file disclosure that Plaintiff certified as accurate reported the WF Account as ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮ :

███████████████████████████████████

(Braster Decl. Ex. A at EXP-MINTUN 000012.)[3]

As Plaintiff confirmed in her deposition testimony, Experian paid Plaintiff valuable consideration in the form of the settlement funds (Braster Decl. Ex. H at 79:14–18 ("Yes.  They released that money")), thereby satisfying all of Experian's obligations under the Settlement Agreement.

## II.     Plaintiff's Second Lawsuit and Experian's Counterclaims

On January 4, 2019, Plaintiff filed the instant lawsuit against Experian, asserting, among other things, that Experian had inaccurately reported the bankruptcy inclusion date on the WF Account and failed to disclose the source of address information.  (*See* ECF No. 1.)

On May 3, 2019, Experian produced the Settlement Agreement to Plaintiff as part of its initial disclosures, thereby putting Plaintiff and her counsel on notice that Experian would bring counterclaims for breach of contract for Plaintiff's prosecution of her released claims.  (*See* Braster Decl. Ex. E (Experian's Initial Disclosures) at 3–4); Ex. H at 162:15–164:13.)

On May 4, 2020—two years after executing the Settlement Agreement, one year after Experian provided a copy of the Settlement Agreement with its initial disclosures, and after multiple rounds of briefing and opportunities to amend—Plaintiff filed the SAC alleging two claims: (1) that Experian violated § 1681e(b) by reporting the WF Account as included in bankruptcy on December 25, 2012 instead of December 20, 2012; and (2) that Experian violated

---

[3] Notably, it also only reported multiple names and addresses with source identification numbers, which Plaintiff also certified as accurate.  (*Id.* at EXP-MINTUN 000023–24.)

§ 1681g(a)(2) by failing to clearly disclose the sources of certain name and address information to Plaintiff. (*See* ECF No. 66 at ¶¶ 31–39 (§ 1681e(b)), ¶¶ 41–49 (§ 1681g(a)(2)).) The purportedly inaccurate bankruptcy inclusion date was identical to the information Experian reported at least as early as September 2016, and again reported on the June 13, 2017 credit file disclosure, which Plaintiff confirmed was accurate as part of the Settlement Agreement.

Because each of the claims alleged in the SAC had been released in the Settlement Agreement, and because Plaintiff had certified the accuracy of the information she now alleges to be inaccurate, Plaintiff materially breached the valid and binding Settlement Agreement and caused damage to Experian. Moreover, Experian reasonably expected Plaintiff to act in good faith in performing her duties under the Settlement Agreement and in a manner consistent with the spirit of the Settlement Agreement, which Plaintiff failed to do after accepting settlement funds, disregarding the Settlement Agreement, and again suing Experian for claims that she released in the SAC.

Accordingly, on May 18, 2020, Experian answered the SAC and filed counterclaims for breach of contract and breach of the implied covenant of good faith and fair dealing. (ECF No. 69.) On April 23, 2021, the Court dismissed the Plaintiff's § 1681g(a)(2) claim for failure to sufficiently allege Article III standing. (*See* ECF No. 105 at 22–23 & n.103.) Although the Court granted Plaintiff leave to amend, Plaintiff did not do so. As a result, the only claims remaining in this lawsuit are Plaintiff's § 1681e(b) included-in-bankruptcy-date claim, and Experian's counterclaims for breach of contract and breach of the implied covenant of good faith and fair dealing. For these breaches, Experian seeks reasonable attorneys' fees and costs incurred in defending against Plaintiff's release claims, as provided for in the Settlement Agreement. (Braster Decl. Ex. A at ¶ 12.) As set forth in the attached declaration, Experian has incurred at least $156,511.30 in damages in asserting its affirmative defenses to the Second Amended Complaint and in asserting its counterclaims against Plaintiff. (Declaration of Kimberly Cave ("Cave Decl.") at ¶¶ 7–8.) These damages continue to accrue, including, for example, the fees incurred in drafting this motion. (*Id.* at ¶ 9.)

**LEGAL STANDARD**

A motion for summary judgment should be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one that may affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine" issue exists where there is sufficient evidence that a reasonable jury could return a verdict for either party. *See id*. Mere arguments or allegations are insufficient to defeat a properly supported motion for summary judgment; the nonmovant must present more than a scintilla of evidence and must advance specific facts to create a genuine issue of material fact for trial. *Id*. at 248–51; Fed. R. Civ. P. 56(e). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," summary judgment should be entered in the movant's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

The party asking for summary judgment can meet its burden by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials negating the opponent's claim." Id. at 323. Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324 (quoting Fed. R. Civ. P. 56(e)). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322- 23. In such case, there can be "no genuine issue as to any material fact" because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* Consequently, the moving party is "entitled to a judgment as a matter of law" because "the nonmoving party has failed to make a sufficient

showing on an essential element of her case with respect to which she has the burden of proof." *Id.* at 323.

## ARGUMENT

Plaintiff's sole § 1681e(b) claim relating to the bankruptcy inclusion date listed on her WF Account fails as a matter of law, as it is indisputably time-barred and was otherwise released as part of Plaintiff's prior settlement with Experian. (*See* Baster Decl. Ex. A.)  And, even if the claim were somehow timely and could survive the Settlement Agreement, Plaintiff cannot identify a single shred of evidence to substantiate her allegations that Experian violated § 1681e(b). Accordingly, Experian's Motion should be granted in its entirety.

### I.      Experian Is Entitled To Summary Judgment On Its Statute Of Limitations Affirmative Defense

As an initial matter, the record conclusively establishes that Plaintiff's § 1681e(b) claim is barred by the statute of limitations.  Under the FCRA, a plaintiff must bring an action "no later than 2 years after the date the plaintiff discovers the violation that is the basis for liability." *Carrington v. Santander Consumer U.S.A., Inc.*, Case No. 17-cv-00038, 2018 WL 4682319, at \*2 (D. Nev. Sept. 28, 2018) (citing 15 U.S.C. § 1681p), *aff'd,* 799 F. App'x 506 (9th Cir. 2020).  The two-year limitations period begins when a "reasonably diligent plaintiff would have *discovered* the facts constituting the violation." *Drew v. Equifax Info. Servs.*, 690 F.3d 1100, 1110 (9th Cir. 2012) (quoting  *Strategic Diversity, Inc. v. Alchemix Corp.*, 666 F.3d 1197, 1206 (9th Cir. 2012)); *Grigoryan v. Experian Info. Sols., Inc.*, 84 F. Supp. 3d 1044, 1057–58 (C.D. Cal. 2014).  The term "discovery" here "encompasses not only those facts the plaintiff actually knew, but also those facts a reasonable diligent plaintiff would have known." *Merck & Co., Inc. v. Reynolds*, 559 U.S. 633, 648 (2010).  In other words, the limitations period runs from when a claimant discovers the "facts" that give rise to a claim, not when she discovers that those facts constitute a legal violation. *Mack v. Equable Ascent Fin., LLC*, 748 F.3d 663, 665–66 (5th Cir. 2014) (citing *Merck*, 559 U.S. at 644–48).

Here, the undisputed record demonstrates that Plaintiff was on notice of the December 25, 2012 included-in-bankruptcy date for the WF Account on September 23, 2016, when Plaintiff

received her reinvestigation results related to her First Lawsuit.  (*See* Braster Decl. Ex. B at D_Mintun 000697.)  Yet Plaintiff never asserted any claim related to the WF Account until she commenced this lawsuit on January 4, 2019—more than 2 years after receiving her September 2016 reinvestigation results.  Accordingly, Plaintiff's claims are time-barred, and Experian is entitled to summary judgment on its Fifth Affirmative Defense.[4]  *See Carrington*, 2018 WL 4682319, at *2 (dismissing FCRA claims that were filed "more than four months past the deadline").

**II.**      **Experian Is Entitled To Summary Judgment On Its Affirmative Defenses And On Its Counterclaims For Breach Of Contract And Breach Of The Implied Covenant Of Good Faith**

Not only is Plaintiff's § 1681e(b) claim untimely, it also violates the terms of the Settlement Agreement.  Under the Settlement Agreement, Plaintiff unambiguously confirmed the accuracy of her WF Account and released any claim she might have related to Experian's reporting of the bankruptcy inclusion date. Because Plaintiff cannot show otherwise, Experian is entitled to summary judgment on its affirmative defenses of release and waiver and its counterclaims for breach of contract and breach of the implied covenant of good faith and fair dealing, including its costs and attorneys' fees for having to defend against this frivolous lawsuit.

**A.**      **The Settlement Agreement Is Valid And Enforceable**

"As a general matter, '[t]he construction and enforcement of settlement agreements are governed by principles of local law.'"  *Jones v. McDaniel*, 717 F.3d 1062, 1067 (9th Cir. 2013) (quoting *O'Neil v. Bunge Corp.*, 365 F.3d 820, 822 (9th Cir. 2004)).  In Nevada, because settlement agreements are contracts, they are "governed by principles of contract law."  *See, e.g., Mack v. Estate of Mack*, 206 P.3d 98, 108 (Nev. 2009) (quoting *May v. Anderson*, 119 P.3d 1254, 1257 (Nev. 2005)).  Contracts are "construed from their written language and enforced as written."  *State Dep't of Transp. v. Eighth Jud. Dist. Court in & for Cty. of Clark*, 402 P.3d 677, 682 (Nev. 2017)

---

[4] To the extent Plaintiff argues that each new report started the limitations period anew, this argument has been squarely rejected by courts, including in this District.  *See Galicia v. PlusFour, Inc.*, Case No. 17-cv-2495 JCM (CWH), 2018 WL 3543039, at *3 (D. Nev. July 23, 2018) ("Other courts have found, and this court agrees, that additional reports such as these cannot restart the limitations period because to do so would allow plaintiff to indefinitely extend the limitations period by simply sending another complaint letter to CRAs, which undermines the statute of limitations set by Congress.") (collecting cases).

(quoting *The Power Co. v. Henry*, 321 P.3d 858, 863 (Nev. 2014)).  To constitute a valid and enforceable contract, there must be "an offer and acceptance, meeting of the minds, and consideration." *May*, 119 P.3d at 1257 (citing *Keddie v. Beneficial Insurance, Inc.*, 580 P.2d 955, 956 (Nev. 1978)).  There can be no dispute that the Settlement Agreement is a valid and enforceable contract under Nevada law.

Under the Settlement Agreement, Plaintiff agreed to, among other things, dismiss her claim in the First Lawsuit and provide a broad release of any claims existing at that time in exchange for a lump sum payment from Experian.  (*See* Braster Decl. Ex. A at ¶¶ 1, 6–7.)  Both parties signed the Settlement Agreement.  (*See id.* at EXP-MINTUN 000005.)  And Plaintiff certified that she ███████████████████" it, and that she █████████████████████████" from her attorney ███████████████████████████.  (*Id.* at ¶ 2.)  Plaintiff confirmed this during her deposition, testifying that she had read the Settlement Agreement, "understood it, to [her] best recollection," and entered into it freely and voluntarily.  (Braster Decl. Ex. H at 74:19–21, 90: 21–23, 25, 91:1–5, 92:22–25.)

Moreover, it is undisputed that the parties fulfilled their obligations under the Settlement Agreement: Experian made the lump sum payment (Braster Decl. Ex. H at 79:14–18 ("Yes.  They released that money")), and Plaintiff later filed a stipulation of dismissal with prejudice on July 25, 2017 (Braster Decl. Ex. F).  Accordingly, the Settlement Agreement is a valid and enforceable contract.  *See GNLV, Corp. v. T. Warren Enters. Inc.*, Case No. 2:13–CV–943 JCM (CWH), 2014 WL 6473558, at *9 (D. Nev. Nov. 18, 2014) ("Plaintiff agreed to voluntarily dismiss the previous lawsuit, and the defendants agreed, and did pay sixteen thousand dollars to the plaintiff.  The court finds this settlement agreement to be a valid contract.").

**B.     Experian Is Entitled To Summary Judgment On Its Affirmative Defenses**

There can be no question that Plaintiff's § 1681e(b) claim was released as part of the Settlement Agreement. Under Nevada law, "when a release is unambiguous, [the Court] must construe it from the language contained within it." *In re Amerco Derivative Litig.*, 252 P.3d 681, 693 (Nev. 2011) (citing *Chwialkowski v. Sachs*, 834 P.2d 405, 406 (Nev. 1992)).  The Settlement Agreement provides:

█████████████████████████████████████████████████████

(Braster Decl. Ex. A at ¶ 1 (emphases added).)

As the record makes clear, Experian's alleged inaccurate reporting of the December 25, 2012 bankruptcy inclusion date existed at the time Plaintiff executed the Settlement Agreement, and it was ███████████████████████████████████████"—*i.e.*, information reported in Plaintiff's Experian credit file—that were ███████████████████ ██████████████████████ in the First Lawsuit. (Braster Decl. Ex. A at ¶ 1.) Indeed, Experian has reported the same bankruptcy inclusion date for the WF Account—*i.e.*, December 25, 2012—since Plaintiff received the results of her reinvestigation in connection with her First Lawsuit on September 23, 2016. (*See* Ex. B at D_Mintun 000697.) Plaintiff never disputed the accuracy of that bankruptcy inclusion date, and indeed *confirmed* it when, as part of the Settlement Agreement, she "████████████████████████████████████████"—which reflected the same December 25, 2012 bankruptcy inclusion date—and certified that ████████████ ████████████████████████████████" (Braster Decl. Ex. A at ¶ 5.) Plaintiff therefore ████████████████████████████████████████████████. (*Id.* at ¶ 1.)

Accordingly, Experian is entitled to summary judgment on its Seventh Affirmative Defense of Waiver and its Eighth Affirmative Defense of Release. *See Ringelberg v. Vanguard Integrity Professionals-Nevada, Inc.*, Case No.: 2:17-cv-01788-JAD-PAL, 2018 WL 6308737, at *6 (D. Nev. Dec. 3, 2018) (granting summary judgment where settlement agreement unambiguously released claims); *Padilla v. Nevada*, Case No. 3:08–cv–410–LRH (WGC), 2012 WL 6021357, at *9–10 (D. Nev. Sept. 18, 2012) (granting summary judgment to defendants where "unambiguous" settlement agreement had release provision applying to "all claims 'known or unknown' which Plaintiff 'has, or may have' regarding the facts and circumstances surrounding the litigation" and which applied "to all 'causes of action, claims, claims for relief, and proceedings, which now exist

in, may arise out of, or have relationship to the Litigation'"), *report and recommendation adopted*, 2012 WL 6020099 (D. Nev. Nov. 28, 2012); *see also In re Cellular 101, Inc.*, 539 F.3d 1150, 1155 (9th Cir. 2008) ("Settlement and release is an affirmative defense . . . .").

### C.    Experian Is Entitled To Summary Judgment On Its Counterclaims

Experian is also entitled to summary judgment its claim for breach of contract. Under Nevada law, a party claiming breach of contract must show: (1) the existence of a valid contract; (2) a breach by the Plaintiff, and (3) damage as a result of the breach. *Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 899 (9th Cir. 2013) (citing *Saini v. Int'l Game Tech.*, 434 F. Supp. 2d 913, 919–20 (D. Nev. 2006)). Each of these elements is satisfied here.

As set forth above, there can be no dispute that the Settlement Agreement is valid and enforceable under Nevada law. There likewise can be no dispute that Plaintiff breached the Settlement Agreement by continuing to press her § 1681e(b) claim. Indeed, despite unambiguously releasing any existing claims against Experian and affirmatively representing that all information on her June 13, 2017 disclosure was accurate—which indisputably encompassed the December 25, 2012 bankruptcy inclusion date on the WF Account—Plaintiff has continued to pursue her § 1681e(b) claim based on this information.[5] In doing so, Plaintiff is, and continues to be, in material breach of the Settlement Agreement. *See ParksA Am., Inc. v. Harper*, 132 Nev. 1015 (Nev. 2016) (affirming summary judgment on breach of reconveyance agreement counterclaim where "release provision was clear on its face and thus should be enforced as written," and rejecting argument that appellants "were not aware of their claims at the time the agreement was approved and signed" because "the agreement released all claims related to the purchase and sale of the employment services agency 'whether known or unknown'"); *Chwialkowski*, 834 P.2d at 406 (holding summary judgment was proper based on an unambiguous release provision in a contract); *see generally May*, 119 P.3d at 1257–58 ("There is little doubt that release terms are generally

---

[5] Notably, Plaintiff's SAC also asserted a claim under § 1681g(a), alleging that Experian failed to disclose the sources from which Experian obtained her name and address information. This claim, too, existed at the time of the Settlement Agreement, and was thus indisputably released. (*See* Braster Decl. Ex. A at EXP-MINTUN 000023–24.) While the Court dismissed this claim in its reconsideration order on April 23, 2021 (*see* ECF No. 105 at 22–23, n.103), Experian was nevertheless forced to start defending against the claim when the SAC was filed on May 4, 2020, (ECF No. 66).

thought to be material to any settlement agreement.") (citing *Inamed Corp. v. Kuzmak*, 275 F. Supp. 2d 1100, 1125 (C.D. Cal. 2002)).

Plaintiff's continued pursuit of her § 1681e(b) claim also violates the implied covenant of good faith and fair dealing claim. To demonstrate that Plaintiff breached this covenant, Experian must show that: (1) Experian and Plaintiff were parties to an agreement; (2) Plaintiff owed a duty of good faith to Experian; (3) Plaintiff breached that duty by performing in a manner that was unfaithful to the purpose of the contract; and (4) Experian's justified expectations were denied. *Branch Banking & Tr. Co. v. Westar Properties*, No. 15-cv-574, 2017 WL 1179942, at *4 (D. Nev. Mar. 29, 2017) (citation omitted). As with the breach of contract claim, each of these elements is satisfied here.

First, Experian and Plaintiff were parties to a duly executed and binding contract—*i.e.*, the Settlement Agreement. (*See* Braster Decl. Ex. A.) Second, through the Settlement Agreement, Plaintiff owes Experian a duty of good faith because "[i]t is well established within Nevada that every contract imposes upon the contracting parties the duty of good faith and fair dealing." *See Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 862 P.2d 1207, 1209 (Nev. 1993). Finally, Plaintiff breached her duty of good faith to Experian, and was unfaithful to the purpose and spirit of the Settlement Agreement, by accepting settlement funds and then suing Experian again by asserting claims in the SAC that were released under the very Settlement Agreement that authorized Plaintiff's receipt of the settlement funds. (*See* Braster Decl. Ex. A at ¶¶ 1–2, 5–7; *compare* ECF No. 66 at ¶¶ 33–36, 38, 41–44, *with* Braster Decl. Ex. D at ¶¶ 60–61, 70, 72–73, 80, 89, 91–92.) Therefore, Experian's justified expectations—that its reporting was accurate and that it would not be sued again for claims that Plaintiff agreed to release in exchange for monetary compensation— were denied. *See Branch Banking & Tr. Co. v. D.M.S.I., LLC*, 871 F.3d 751, 762–63 (9th Cir. 2017) (ruling the implied covenant is breached when "one party performs a contract in a manner that is unfaithful to the purpose of the contract and the justified expectations of the other party are thus denied") (quoting *Perry v. Jordan*, 900 P.2d 335, 338 (Nev. 1995) (quoting *Hilton Hotels Corp.*, 808 P.2d at 923)).

As a result of these breaches, Plaintiff has inflicted, and continues to inflict, damages on Experian in the form of attorneys' fees and costs incurred in having to defend against this frivolous lawsuit. There is no question here that Experian is entitled to "be compensated for financial loss incurred as a result of Plaintiffs' decision to file a meritless lawsuit." *Home Gambling Network, Inc. v. Piche*, No. 05-cv-610, 2015 WL 1734928, at *17 (D. Nev. Apr. 16, 2015). This necessarily includes the cost of defending this lawsuit. *See, e.g.*, *GNLV*, 2014 WL 6473558, at *10 (ruling plaintiff "suffered damages by having to file yet another lawsuit against the same defendants as a result of the defendants' breach of [a settlement agreement]"); *Enterprises v. Jewelry*, No. 12-cv-2753, 2014 WL 12558293, at *2 (C.D. Cal. Feb. 3, 2014) ("Had Classique chosen not to litigate this issue, Tacori would not have incurred the additional attorney's fees it alleges. Classique was aware of the terms of the Settlement Agreement at the time it filed its counterclaim."). Indeed, under the Settlement Agreement, Experian is entitled to recover the "█████████████████ ████████████████████████████" for enforcing the Settlement Agreement. (Braster Decl. Ex. A at ¶ 12.)

Although the amount of Experian's damages "need not be met with mathematical exactitude," there "must be an evidentiary basis for determining a reasonably accurate amount of damages." *Mort Wallin of Lake Tahoe, Inc. v. Comm. Cabinet Co., Inc.,* 784 P.2d 954, 955 (Nev. 1989) (citations omitted). Such an evidentiary basis can be supported by declarations, and other receipts, invoices, and checks. *See Piche*, 2015 WL 1734928, at *18. To date, Experian has incurred $156,511.30 in attorneys' fees and costs in connection with substantiating its affirmative defenses and counterclaims. (Cave Decl. at ¶ 7.)[6] Because Plaintiff has not (and cannot) introduce any evidence to the contrary, the Court should grant Experian summary judgment on its counterclaims and award it $156,511.30 in attorneys' fees and costs.

---

[6] While Plaintiff should have undeniably known since the outset of this lawsuit on January 4, 2019, and certainly when Experian served its initial disclosures highlighting the Settlement Agreement in May 2019, that her claims were released, Experian nevertheless only seeks damages relating to its affirmative defenses and counterclaims, not those related to Experian's prior motions to dismiss or reconsideration.

**III.    Plaintiff Cannot Establish the Essential Elements of Her § 1681e(b) Claim**

Even if not time-barred and released, Plaintiff's § 1681e(b) claim fails because she cannot present any evidence to support it. A consumer reporting agency must maintain "reasonable procedures to assure the maximum possible accuracy" of the information it includes in consumer reports. 15 U.S.C. § 1681e(b). To prevail on a § 1681e(b) "reasonable procedures" claim, Plaintiff must show an inaccuracy in a consumer report, and demonstrate that Experian failed to follow reasonable procedures to assure maximum possible accuracy. *Cortez v. Trans Union, LLC*, 617 F.3d 688, 708 (3d Cir. 2010); *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995). Additionally, a plaintiff must establish either actual damages for a negligent violation or that Experian acted willfully. Here, Plaintiff cannot establish any of these factors, much less all of them.

As a threshold matter, Plaintiff cannot establish an actionable inaccuracy. To sustain a § 1681e claim, "a consumer must first make a *prima facie* showing of inaccurate reporting by the CRA." *Shaw v. Experian Info. Sols., Inc.*, 891 F.3d 749, 756 (9th Cir. 2018) (citations and quotations omitted); *Carvalho v. Equifax Info. Servs. LLC*, 629 F.3d 876, 890-91 (9th Cir. 2010). Information is inaccurate only "where it either is patently incorrect or is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Shaw*, 891 F.3d at 756. "[I]f a plaintiff cannot establish that a credit report contained an actual inaccuracy, then the plaintiff's 'claims fail as a matter of law.'" *Keller v. Experian Info. Sols., Inc.*, No. 16-cv-04683, 2017 WL 130285, at *5 (N.D. Cal. Jan. 13, 2017) (quoting *Carvalho*, 629 F.3d at 890).

Plaintiff's only alleged inaccuracy is the December 25, 2012 bankruptcy inclusion date on her WF Account, which is purportedly off by five days. (*See* ECF No. 19 at ¶¶ 54–55.) But Plaintiff cannot now credibly claim that this date is patently inaccurate when she previously verified that it was accurate. Nor can she establish that this mere five-day discrepancy was misleading to such an extent that it could reasonably be expected to adversely affect credit decisions. *See Shaw*, 891 F.3d at 759 (quotation marks omitted); *Gallaher v. US Bank Nat'l Assoc.*, No. 14-cv-1877, 2016 WL 1118239, at *14, n.12 (D. Conn. Mar. 22, 2016) (a "minor discrepancy . . . is insufficiently material to support an FCRA claim"); *cf. Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1550 (2016)

("[N]ot all inaccuracies cause harm or present any material risk of harm."). Indeed, "[m]ere imprecision does not render information inaccurate." *Shaunfield v. Experian Info. Sols., Inc.*, 991 F. Supp. 2d 786, 798 (N.D. Tex. 2014) (quoting *Toliver v. Experian Info. Sols., Inc.*, 973 F. Supp. 2d 707, 714, (S.D. Tex. 2013)). For example, in *Gallaher*, the court found that a "minor discrepancy between the reports regarding the amount past due—less than $5,000 where the total amount was over $250,000 . . . insufficiently material to support an FCRA claim." 2016 WL 1118239, at *14. So too here. Listing the bankruptcy inclusion date as December 25, 2012, rather than December 20, 2012, is not a material inaccuracy. More importantly, Plaintiff has developed no *evidence* that any creditor ever saw the bankruptcy inclusion date of December 25, 2012, much less made an adverse decision as a result. Nor could she, as no reasonable creditor would construe the five-day discrepancy as grounds to reach an adverse credit decision. Accordingly, because Plaintiff cannot establish the threshold element of an inaccuracy, her claim cannot proceed for this reason alone.

Even if the five-day discrepancy between December 20 and December 25 were an actionable inaccuracy, Plaintiff has not developed any evidence that Experian failed to follow reasonable procedures in preparing a consumer report in this case. Indeed, there is not a shred of evidence to substantiate either of Plaintiff's theories—(1) that Experian adopted, then violated, Metro 2 guidelines with respect to the bankruptcy inclusion date, or (2) that Experian violated an internal policy in its reporting with actual evidence. In fact, after filing the Second Amended Complaint, Plaintiff propounded no discovery on Experian, deposed no witnesses, and can point to no evidence to establish her claim. Plaintiff has not even produced the November 2018 document on which she claims the purportedly inaccurate date appears. As such, Plaintiff cannot establish that Experian did not follow "reasonable procedures to assure maximum possible accuracy" on the "consumer report."

Plaintiff's claim also fails because she cannot establish willfulness. "The FCRA does not impose strict liability." *Guimond*, 45 F.3d at 1333; *Sarver v. Experian Info. Sols.*, 390 F.3d 969, 971 (7th Cir. 2004). "Instead, liability is imposed only when a CRA either willfully or negligently fails to maintain reasonable procedures to avoid improper disclosures." *Abbink v. Experian Info.*

*Sols., Inc.*, No. 19-cv-1257, 2019 WL 6838705, at *4 (C.D. Cal. Sept. 20, 2019); *Banga v. Experian Info. Sols., Inc.*, No. 09-cv-04867, 2013 WL 5539690, at *6 (N.D. Cal. Sept. 30, 2013) ("The FCRA imposes civil liability on any consumer reporting agency which is either negligent or willful in failing to comply with any requirement imposed under the FCRA. 15 U.S.C. §§ 1681n, 1681o."). Plaintiff cannot come close to making this showing.

Nothing in the record establishes that Experian acted either intentionally or recklessly in reporting the bankruptcy inclusion date on the WF Account. To the contrary, at her deposition, Plaintiff testified that she did not believe that Experian maliciously tried to harm her (Mintun Dep. at 202:13–14, 16), and she admitted that she did not know if Experian intentionally reported incorrect information about her (Mintun Dept. at 202:2–4, 7–11). And, although this Court recently implied that a jury could find that Experian's conduct was unreasonable if Plaintiff's "dispute letter put Experian on notice that her WF/Home PR account should be reported as included in bankruptcy," (ECF No. 105 at 17), the record confirms that Plaintiff's November 15, 2018 dispute letter makes no mention whatsoever of the reporting of any bankruptcy inclusion date regarding any account on her Experian consumer disclosure. (*See* D_Mintun 000471–000472.) Therefore, no reasonable jury could find that Experian was on notice of the reporting of a five-day variance in the included-in-bankruptcy-date for the WF Account. Without notice of the five-day variance, Experian could not have acted in reckless disregard of the FCRA. *Cf. Davis v. Carrington Mortg. Servs., LLC*, 454 F. Supp. 3d 996, 1004 (D. Nev. 2020) (dismissing plaintiff's § 1681e(b) claim "that Experian failed to follow reasonable procedures in determining [plaintiff's] CMS account was discharged in her Chapter 13 bankruptcy because [plaintiff's] letter did not put Experian on notice of the nature of her dispute").

Simply put, Plaintiff's willfulness claim rests upon her generic and conclusory statements regarding Experian's alleged substantive violations. (ECF No. 66 at ¶¶ 38–39.) This is not enough to establish a willful violation. *See Abbink*, 2019 WL 6838705, at *5 (recognizing that "generic and conclusory statements . . . [are] insufficient to state a willfulness claim under Section 1681n") (collecting cases). Indeed, "it is just as possible, based on the factual allegations, that [Experian] made an innocent mistake." *Perl v. Plains Commerce Bank*, No. 11-cv-7972, 2012 WL 760401, at

*2 (S.D.N.Y. Mar. 8, 2012) (dismissing plaintiff's willfulness claim, despite plaintiff sufficiently alleging that defendant "lacked a permissible purpose," because "plaintiff's assertion that defendant's state of mind in doing so was willful is conclusory").  Accordingly, because Plaintiff cannot establish any element of her FCRA claim, the Court should grant summary judgment in Experian's favor.

### CONCLUSION

For all these reasons, Experian respectfully requests that this Court grant its Motion for Summary Judgment in its entirety, and award Experian all attorneys' fees and costs incurred in defending against the released claims asserted in the Second Amended Complaint.

Dated: May 24, 2021

By:  */s/ Jennifer L. Braster*
Jennifer L. Braster
Nevada Bar No. 9982
1050 Indigo Drive, Suite 200
Las Vegas, NV 89145

*Attorneys for Defendant*
*Experian Information Solutions, Inc.*

**<u>CERTIFICATE OF SERVICE</u>**

Pursuant to Federal Rule of Civil Procedure 5(b), I hereby certify that I am an employee of NAYLOR & BRASTER and that on this 24th day of May 2021, I caused the document **EXPERIAN INFORMATION SOLUTIONS, INC.'S MOTION FOR SUMMARY JUDGMENT** to be served through the Court's CM/ECF system to those persons designated by the parties as receiving service.

*/s/ Jennifer L. Braster*
An Employee of NAYLOR & BRASTER